# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-1725

EDWARD E. MEEDEL, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 4, 2009)

*Calvin Hansen*, of Lincoln, Nebraska, was on the brief for the appellant.

*John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Kenneth A. Walsh*, Deputy Assistant General Counsel; and *Deborah A. Hoet*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and LANCE and DAVIS, *Judges*.

DAVIS, *Judge*: U.S. Navy veteran Edward E. Meedel appeals, through counsel, from a May 20, 2008, Board of Veterans' Appeals (Board) decision that denied service connection for bilateral hearing loss. Panel consideration is required to determine whether 38 C.F.R. § 3.385 (2009)–the regulation under which impaired hearing is determined to be a disability–provides for the averaging of auditory thresholds. The Court answers in the negative. For the reasons set forth below, the Court will affirm the Board's May 2008 decision.

## I. INTRODUCTION

In April 2006, Mr. Meedel submitted a service-connection claim for bilateral hearing loss, accompanied by an audiologist's report containing results of an audiogram taken in March 2006. A VA regional office denied that claim, and he appealed. On May 20, 2008, the Board determined that Mr. Meedel "fail[ed] to show hearing deficit of either ear which meets the threshold levels for

impairment as discussed in 38 C.F.R. § 3.385." Record (R.) at 10. This appeal followed. Mr. Meedel argues that, by calculating the average of the auditory thresholds for the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz, his result of 26.25 decibels is sufficient to meet the standard set forth in § 3.385. Appellant's Brief (Br.) at 4.

The Secretary argues that it is inappropriate to apply the decibel average to the regulation, because the language of § 3.385 specifies which measurements should be used. Secretary's Br. at 7. When the individual measurements, rather than the average, are used, Mr. Meedel fails to meet the threshold requirements for classification as disabled due to hearing impairment. Secretary's Br. at 7.

## II. ANALYSIS

In order to establish service connection, "the veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during the service." *Shedden v. Principi,* 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). The Board's determination of service connection is a finding of fact that the Court reviews under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4); *Mariano v. Principi,* 17 Vet.App. 305, 313-17 (2003).

The Court must determine whether the Board clearly erred in its conclusion that Mr. Meedel does not have a present disability under § 3.385. The criteria for determining whether a disability due to hearing impairment exists are set out in § 3.385, which states:

> For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent.

38 C.F.R. § 3.385.

According to the audiogram submitted by Mr. Meedel, his readings are as follows:

|   | 500 | 1000 | 2000 | 3000 | 4000 |
|---|-----|------|------|------|------|
| R | 25  | 20   | 20   | 30   | 35   |
| L | 25  | 20   | 25   | 30   | 30   |

R. at 185. For Mr. Meedel's hearing loss to be classified as a disability under the first alternative outlined in § 3.385, at least one of the numbers would need to be 40 or larger, with right and left ear scores considered separately. *See Palczewski v. Nicholson,* 21 Vet.App. 174, 175-76 (2007) (evaluating right and left ear scores separately); *Heuer v. Brown,* 7 Vet.App. 379, 382 (1995) (awarding service connection for left-ear hearing loss and denying it for right-ear hearing loss); *Hensley v. Brown,* 5 Vet.App. 155, 163 (1993) (evaluating left and right ear hearing loss separately and analyzing the right ear scores to determine that they did not meet the criteria for the first and second alternatives set forth in the regulation). The audiogram does not show any numbers 40 or larger. Indeed, Mr. Meedel does not dispute that his hearing loss is not classified as a disability under the first alternative outlined in § 3.385.

As to the third alternative, which requires a speech recognition score of less than 94 percent, Mr. Meedel states that the audiologist's report shows that his speech reception threshold is 20 and his "Most Comfortable Level" is 65. Appellant's Br. at 4. The Board, in its ruling, determined that the audiologist's report shows a speech recognition score of 100. R. at 8. The speech reception threshold and the "Most Comfortable Level" results are not relevant to a determination of disability because the regulation clearly calls for a speech recognition score using the Maryland CNC Test. Mr. Meedel has not disputed this finding, and because the audiologist's report does not clearly identify the speech recognition score, the Court is unable to conclude that the Board erred in this finding.

The question before the Court therefore becomes whether Mr. Meedel's hearing loss is considered a disability under the second alternative set forth in § 3.385. The regulation indicates a disability only where the audiogram reports three numbers over 26. VA has long determined disability by considering each ear separately. *See* VA Gen. Coun. Prec. 32-97 ¶ 2 (Aug. 29, 1997) ("[S]ince the days of the Veterans Bureau, hearing loss has been evaluated to reflect the level of

disability that exists given the degree of impairment in each ear."); VETERANS ADMINISTRATION SCHEDULE FOR RATING DISABILITIES, extension 8-B, at para. 1(a) (1945 ed., Mar. 23, 1956 extension) ("designating the impairment in efficiency of each ear separately"); VETERANS ADMINISTRATION SCHEDULE FOR RATING DISABILITIES, extension 9, at para. 11 (1945 ed., June 9, 1952 extension) (rating hearing loss based on decibel loss in "both ears" and "one ear"); VETERANS ADMINISTRATION SCHEDULE FOR RATING DISABILITIES, at para. 62 (1945 ed.) (rating based on "absence of air and bone conduction in one ear" and "in the other ear").  The Court accepts VA's consideration of each ear separately as a reasonable interpretation of the regulation and has applied VA's interpretation in past decisions.  *See Palczewski, Heuer,* and *Hensley,* all *supra.*  Looking at the scores for Mr. Meedel's ears separately, Mr. Meedel has only two numbers over 26 for each ear.

Mr. Meedel argues that the readings for each ear average 26.25.  This, he claims, is sufficient to meet the requirements of the regulation, even though the readings, when considered separately, are not sufficient.  The Secretary, however, argues that an average is not appropriate under § 3.385.  He asserts that an average of individual readings is only appropriate under 38 C.F.R. § 4.85 (2009), which is used to rate a disability after it is determined that a disability exists under § 3.385.

The pertinent portions of § 4.85 read as follows:

(b) Table VI, "Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination," is used to determine a Roman numeral designation (I through XI) for hearing impairment based on a combination of the percent of speech discrimination (horizontal rows) and puretone threshold average (vertical columns).  The Roman numeral designation is located at the point where the percentage of speech discrimination and puretone threshold averages intersect.

. . . .

(d) "Puretone threshold average," as used in Tables VI and VIa, is the sum of the puretone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four.  This average is used in all cases (including those in § 4.86) to determine the Roman numeral designation for hearing impairment from Table VI or VIa.

38 C.F.R. § 4.85.  While § 4.85 specifically calls for averaging puretone thresholds when rating a disability, § 3.385 does not specifically call for averaging.  The Court must therefore determine whether § 3.385 permits averaging.

4

A.  Plain Language of the Regulation

In interpreting a regulation, the Court begins with the plain language of the regulation.  *Cf. Perrin v. United States,* 444 U.S. 37, 42 (1979) ("We begin with the language of the [] Act itself."). "If the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" *Trope v. Nicholson,* 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner,* 513 U.S. 115, 120 (1994)).

We see no ambiguity in the regulation.  Section 3.385 does not contain the word "average." In contrast, § 4.85 specifically calls for averaging.  Thus, when the Secretary intended to permit averaging, he included the appropriate language in the regulation.  Nevertheless, assuming arguendo, that the regulation is ambiguous, we turn to the Secretary's interpretation of § 3.385 and consider its reasonableness.

B.  Reasonableness of Secretary's Interpretation

This Court determines the reasonableness of the Secretary's interpretation of the regulation (i.e., that averaging is unavailable for § 3.385) under the authority of 38 U.S.C. § 7261(a)(1), which provides that the Court has a duty to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary."  We note that the Secretary, acting under the authority of 38 U.S.C. § 501, has the right to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including (1) regulations with respect to the nature and extent of proof and evidence . . . in order to establish the right to benefits under any such law."  38 U.S.C. § 501(a).  These regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron v. Natural Resources Def. Council,* 467 U.S. 837, 843-44 (1984); *see also Auer v. Robbins,* 519 U.S. 452, 463 (1997) ("[Secretary] is free to write the regulations as broadly as he wishes, subject only to the limits imposed by the statute."); *Hodge v. West,* 155 F.3d 1356, 1360-61 (Fed. Cir. 1998).

In determining whether the Secretary has reasonably interpreted § 3.385, when the plain meaning of the words is in doubt, the Court "'must necessarily look to the administrative construction of the regulation.'"  *Smith v. Nicholson,* 451 F.3d 1344, 1350 (Fed. Cir. 2006) (quoting *Bowles v.*

5

*Seminole Rock & Sand Co.,* 325 U.S. 410, 414 (1945)). When "regulations leave the pertinent inquiry unresolved, deference must be afforded to the [Secretary's] interpretation as long as that interpretation is not 'plainly erroneous or inconsistent with the regulations.'" *Smith,* 451 F.3d at 1349; *see also Auer,* 519 US. at 461; *cf. Chevron,* 467 U.S. at 844 ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."). Such interpretations of regulations by an agency are "entitled to substantial deference by the courts." *Smith,* 451 F.3d at 1349; *see also Auer,* 519 U.S. at 461. Accordingly, we look to the Secretary's interpretation of the regulation and this Court's caselaw to resolve the dispute.

The Secretary has interpreted § 3.385 on several occasions, including in his brief to this Court and in a presentation to Congress. In interpreting § 3.385 in his brief, the Secretary reasoned:

> Regulatory section 3.385 does not permit the averaging of the measurements, but is very explicit in what is required to meet the minimum thresholds. . . . Once the initial threshold requirement is met under 38 C.F.R. § 3.385, the determination of the level of disability due to any such service-connected hearing loss will be made under 38 C.F.R. § 4.85. . . . It is at that point that the averaging is permitted to match the loss with the disability rating. But averaging is not permitted to meet the threshold requirements of 38 C.F.R. § 3.385.

Secretary's Br. at 7. Further, in presenting the June 1999 amendment to § 4.85 to Congress, during the rulemaking period,

> [o]ne commenter suggested that the language for evaluation [under § 4.85] parallel the language of 38 CFR [§] 3.385.
>
> [The Secretary responded:]
> The purpose of § 3.385, "Disability due to impaired hearing," is to explain the basis for determining whether impaired hearing is a disability, which is different from the purpose of § 4.85, which is to explain how to evaluate hearing impairment, once it has been determined to be a disability, for purposes of disability compensation. Since the regulations serve different purposes, and different frequencies are involved, the use of parallel language is neither necessary nor feasible.

Schedule for Rating Disabilities: Diseases of the Ear and Other Sense Organs, 64 Fed. Reg. 25,202, 25,203 (May 11, 1999) (to be codified at 38 C.F.R. pt. 4); *see also* Compensation for Certain Cases of Bilateral Deafness, 69 Fed. Reg. 48,148, 48,149 (Aug. 9, 2004) (stating § 3.385 is used "to define the point at which hearing impairment is considered a disability").

These two statements, taken together, make it clear that the Secretary interprets § 3.385 to be different from § 4.85 in purpose and procedure. As to purpose, § 3.385 is utilized first to determine whether hearing loss is of the level to be recognized as a disability, while § 4.85 is used to rate hearing loss once it has been characterized as a disability. As to procedure, § 4.85 permits averaging of puretone thresholds in rating a disability, while § 3.85 does not permit averaging for establishing that a disability exists. We must give substantial deference to this interpretation. *See Smith,* 451 F.3d 1344 (Fed. Cir. 2006).

The Secretary's interpretation of § 3.385 finds further support in the absence from § 3.385 of language regarding averaging. The Court does not view this absence as an oversight or accidental omission. *Cf. Russello v. United States,* 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' . . . Had Congress intended to restrict [the statute] . . . , it presumably would have done so expressly as it did in the immediately following subsection . . . . We would not presume to ascribe this difference to a simple mistake in draftsmanship." (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972))); *Barrett v. United States,* 423 U.S. 212, 217 (1976) ("Congress knew the significance and meaning of the language it employed. . . . Had Congress intended to confine [the statute], it would have so provided, just as it did in other sections."). The Secretary knows how to write a regulation. His exclusion of the word "average" from § 3.385 is telling, particularly considering he included the word in § 4.85. We do not presume that the omission of the word "average" from § 3.385 is a mistake in draftsmanship, but rather an intentional exclusion.

Moreover, this Secretary's interpretation of § 3.385 is consistent with this Court's caselaw. In *Hensley v. Brown,* the Board denied the appellant service connection for bilateral hearing loss. The Court discussed § 3.385 and § 4.85 and the role of averages in these regulations. The Court stated:

> Section 3.385 establishes that a "disability" will ***not*** be found to exist when audiometric scores are within the established limits; it does not by its terms require that a "disability" be ***found*** to exist whenever audiometric scores are outside of those limits. However, 38 C.F.R. § 4.85, which establishes criteria for evaluating the severity of a service-connected hearing disability, provides for a service-connected

7

disability rating for ***any*** amount of hearing loss, including where average puretone decibel loss on audiometric examination is between 0-41 dB.[1]

5 Vet.App. at 160. Here, this Court set out distinctions between § 3.385 and § 4.85, with § 3.385 setting parameters for determining whether a disability exists and § 4.85 establishing rating criteria for a disability. *See Palczewski,* 21 Vet.App. at 179 (stating § 3.385 "prescribes the level at which a hearing loss becomes a disability for purposes of entitlement to VA compensation. . . . [N]ot every change in hearing should be service connected.") This Court specifically mentioned that § 4.85 includes evaluations based on puretone averages, and implied that averages are used to determine "***any*** amount of hearing loss," which may not be hearing loss within the established limits of § 3.385. *Id*. Because this Court noted the distinction between § 3.385 and § 4.85, and noted the role averages play in § 4.85, the Secretary's interpretation of § 3.385 is consistent with our decision in *Hensley*.

Under both this Court's prior caselaw and the Secretary's longstanding interpretation of § 3.385, the averaging of auditory thresholds, which is specifically permitted in § 4.85, is not appropriate under § 3.385. Based on the above analysis, the Court concludes that the Secretary's interpretation of § 3.385 is a reasonable interpretation of an unambiguous regulation. Our determination is consistent with Supreme Court and Federal Circuit precedent, as well as prior cases of this Court. *See Auer, Chevron, Smith,* and *Hensley,* all *supra*. Accordingly, we hold that the Secretary's interpretation that § 3.385 does not permit averaging is reasonable and consistent with its regulatory history.

In light this holding, we conclude that the Board did not err in determining that Mr. Meedel's hearing loss is not considered a disability under any of the three alternatives set forth in § 3.385. He does not have an auditory threshold of 40 decibels or greater for any of the designated frequencies

---

[1] *Hensley*, which was decided in 1993, applied the 1992 version of § 3.385, which provided:

Service connection for impaired hearing shall not be established when hearing status meets pure tone and speech recognition criteria. Hearing status shall not be considered service-connected when the thresholds for the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz are all less than 40 decibels; the thresholds for at least three of these frequencies are 25 decibels or less; and the speech recognition scores using the Maryland CNC Test are 94 percent or better.

*Hensley,* 5 Vet.App. at 158. On November 25, 1994, VA published an amended version of 38 C.F.R. § 3.385. *Heuer,* 7 Vet.App. at 384. The amendment "made no substantive change in the effect of the regulation," but switched the language "from what is ***not*** service connected to what ***is*** a disability." *Id.* at 585-86.

of 500, 1000, 2000, 3000, and 4000 Hertz.  He does not have at least three auditory thresholds of 26 decibels or greater for the designated frequencies.  And he does not have a speech recognition score using the Maryland CNC Test of less than 94 percent.  As a result, he has not demonstrated a present disability.  Because he lacks a present disability, the Court finds no clear error in the Board's denial of service connection.  *See Shedden,* 381 F.3d 1163 (Fed. Cir. 2004).

### III.  CONCLUSION

Based on consideration of the foregoing, the Court AFFIRMS the May 2008 Board decision.