# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-2968

EVERETT EMERSON, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 8, 2016                                      Decided August 10, 2016)

*Sandra E. Booth*, of Columbus, Ohio, for the appellant.

*Ronen Z. Morris*, with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Thomas E. Sullivan*, Deputy Assistant General Counsel; and *Michael J. A. Klein*, were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, *Chief Judge*, and PIETSCH and BARTLEY, *Judges*.

BARTLEY, *Judge*: Veteran Everett Emerson appeals through counsel a May 12, 2014, Board of Veterans' Appeals (Board) decision that denied (1) an effective date earlier than August 23, 2010, for the award of service connection for post-traumatic stress disorder (PTSD) and (2) an initial PTSD disability evaluation in excess of 50%. Record (R.) at 3-22.[1] The veteran's PTSD service-connection claim was initially denied in February 2003 but thereafter granted in June 2011 based upon an amendment to 38 C.F.R. § 3.304(f), which altered the requirements regarding verification of in-service stressors. Mr. Emerson then submitted to VA service department records not previously associated with his claims file. This case was referred to a panel to determine whether VA is

---

[1] The Board remanded the issue of whether there was clear and unmistakable error in a February 2003 rating decision that denied service connection for PTSD. R. at 20-22. Because a remand is not a final decision of the Board subject to judicial review, the Court does not have jurisdiction to consider that issue at this time. *See Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2016).

required, pursuant to 38 C.F.R. § 3.156(c)(1), to "reconsider the claim" in such circumstances.[2]  In other words, in light of the fact that Mr. Emerson was granted service connection on the basis of a liberalizing regulation prior to VA's receipt of newly associated service department records, does the language of § 3.156(c)(1) require reconsideration of his initial 2003 claim on the basis of those newly associated service department records?  We conclude that such reconsideration is mandated by the plain language of the regulation and, accordingly, we will set aside the portion of the May 2014 Board decision denying an earlier effective date for the award of service connection for PTSD and remand that matter for additional development, if necessary, and readjudication consistent with this decision.  We will also set aside and remand the portion of the Board decision denying an initial PTSD disability evaluation in excess of 50%.

## I.  FACTS & PROCEDURAL HISTORY

Mr. Emerson served on active duty in the U.S. Army from September 1967 to September 1969, including service in Vietnam for which he received, inter alia, the Vietnam Service Medal, the Aircraft Crewman Badge, and the Air Medal.  R. at 377.

In September 2000, the veteran sought service connection for PTSD.  R. at 395-98, 402.  In November 2000, he submitted a written statement describing in general terms his service in Vietnam, mentioning that he served as a helicopter door gunner and participated in missions transporting wounded servicemembers to the hospital.  R. at 383-90; *see* R. at 338 (May 1968 medical qualification for aerial gunner duty).  He also submitted a June 2002 private medical opinion, which diagnosed severe chronic PTSD based on the veteran's reports of seeing wounded and dead

---

[2] This Court has not yet had occasion to address this question.  In one previous case, we remanded for the Board to address in the first instance whether § 3.156(c) was applicable where official service department records were associated with the claims file before and after a grant of service connection.  *See Pacheco v. Gibson*, 27 Vet. App. 21, 23-24, 30-31 (2014) (en banc) (per curiam).  In another, we remanded for the Board to consider the applicability of § 3.156(c) where VA did not obtain previously unassociated official service department records but appeared to have granted service connection based on lay statements and a VA medical opinion that relied on those records.  *See generally Stowers v. Shinseki*, 26 Vet.App. 550 (2014).  In all other cases where this Court or the U.S. Court of Appeals for the Federal Circuit has addressed aspects of § 3.156(c), the respective service-connection claims were in a state of denial at the time the relevant official service department records were associated with the claims file.  *See Blubaugh v. McDonald*, 773 F.3d 1310, 1311 (Fed. Cir. 2014); *Young v. McDonald*, 766 F.3d 1348, 1350 (Fed. Cir. 2014); *Cline v. Shinseki*, 26 Vet.App. 18, 19-21 (2012); *Shipley v. Shinseki*, 24 Vet.App. 458, 460 (2011); *Mayhue v. Shinseki*, 24 Vet.App. 273, 275-76 (2011); *Vigil v. Peake*, 22 Vet.App. 63, 64-65 (2008).

servicemembers and "seeing tracers coming at him" while on missions as a helicopter crewman. R. at 360-71. The physician noted that the veteran experienced difficulty sleeping; intrusive nightmares and recollections that induced rapid pulse, cold sweats, and hot flashes; depression; difficulty concentrating; and hypervigilance that caused him to compulsively lock and recheck doors at night and sit with his back to the wall when dining out. R. at 360. The physician further noted that Mr. Emerson avoided crowds and often felt irritable, angry, and suspicious toward people. R. at 362 (noting the veteran's statement: "I can't work for anybody."). According to the physician, the veteran had significant impairment in social, occupational, and family relationships, as well as in judgment and mood, and his speech became increasingly incoherent as the interview progressed. R. at 366.

In July 2002, VA requested service medical records and verification of "only the unverified periods of service shown." R. at 320. In August 2002, the RO issued a deferred rating decision so that (1) the veteran could be sent and complete a stressor statement form (since the previously submitted statement was "almost two years old and quite vague"), (2) VA could obtain the veteran's personnel file, and (3) VA could determine whether the veteran's Air Medal bore a "V" device, which would definitively verify a combat stressor. R. at 319. VA sent the stressor statement form to the veteran, R. at 314-18, but there is no indication whether it undertook the other development mentioned.

In February 2003, the RO denied service connection for PTSD based on the lack of a verified stressor, noting that Mr. Emerson failed to return the stressor form. R. at 299-307. Mr. Emerson did not appeal this decision and it became final. *See* R. at 21.

Effective July 12, 2010, VA amended § 3.304(f) to eliminate the requirement for corroborative evidence of a stressor where a VA mental health expert has diagnosed PTSD and the stressor is related to the veteran's fear of hostile military or terrorist activity. Stressor Determinations for Posttraumatic Stress Disorder, 75 Fed. Reg. 39,843 (July 13, 2010) (final rule) (codified at 38 C.F.R. § 3.304(f)(3)); *see also* Stressor Determinations for Posttramuatic Stress Disorder, 74 Fed. Reg. 42,617 (Aug. 24, 2009) (proposed rule).

In August 2010, Mr. Emerson stated his belief that he should be receiving more from VA for his PTSD, R. at 279, which VA interpreted as a request to reopen his claim for service connection

3

for PTSD, R. at 268.  Four months later, he retained an attorney to represent him.[3]  R. at 258-59.  He underwent a VA contract examination in January 2011.  The examiner noted the veteran's reports of having participated in combat as a helicopter door gunner.  R. at 244-45.  The examiner noted reports of sleep disturbance with nightmares, intrusive recollections, anxiety, avoidance behaviors, exaggerated startle response, and "pervasive depressed mood impacting all facets of work and home life."  R. at 246-49.

In June 2011, the RO granted service connection for PTSD.  R. at 186-99.  The RO noted that "VA recently changed the requirements regarding verification of in-service stressors" in PTSD claims and, as codified at 38 C.F.R. 3.304(f)(3), was "now able to take into consideration a veteran's fear of hostile military or terrorist activity as a verified stressor provided the conditions and circumstances of his [or her] service are consistent with his [or her] statements and the VA examiner associates a clinical diagnosis of PTSD with these factors."  R. at 194.  In light of the notation of the Vietnam Service Medal on the veteran's DD 214, which showed service "in a location involving hostile military or terrorist activity"; the veteran's statements, which were "consistent with the place, type, and circumstance" of service; and the January 2011 examiner's opinion linking PTSD to the veteran's fear of hostile military or terrorist activity in Vietnam, the RO awarded service connection. *Id.*  The RO assigned a 30% disability evaluation and an effective date of August 23, 2010, the date VA received the request to reopen the claim.  R. at 194-95.

Mr. Emerson filed a timely Notice of Disagreement (NOD) as to the effective date and evaluation assigned.  R. at 172-78.  He underwent another VA examination in January 2012.  The examiner confirmed the diagnosis of PTSD with depression and opined that the veteran suffered from occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation.  R. at 154.  Upon evaluation, the examiner indicated that the veteran suffered from depressed mood, chronic sleep impairment, mild memory loss, flattened affect, difficulty establishing and maintaining effective work and social relationships, and difficulty adapting to stressful circumstances.  R. at 157-58.  Last,

---

[3] Polly Murphy has since withdrawn from representing Mr. Emerson; he is currently represented by Sandra E. Booth.

the examiner remarked that the veteran's "PTSD and associated depression continue to produce moderate work and social dysfunction." R. at 159. The RO continued to deny a higher initial evaluation in excess of 30% and an earlier effective date, R. at 131-49, and the veteran appealed to the Board, R. at 130.

In July 2012, Mr. Emerson and his wife testified at a Board hearing as to his psychiatric symptoms and emotional problems, trouble working, and social impairment. R. at 62-77, 84-118. Mr. Emerson's then-counsel also explicitly raised the applicability of § 3.156(c). R. at 116 ("It's not discretionary [is what] the reg[ulation] says. The VA shall go back and readjudicate the final decision. I think that's going to be the relevant regulation there.").

Later in July 2012, Mr. Emerson submitted through then-counsel argument to the Board, wherein he raised the issue of the applicability of § 3.156(c) to the issue of an earlier effective date for the grant of service connection for PTSD. R. at 25-30. He also submitted service department records, one of which was an Air Medal Worksheet that listed the date and duration of completed helicopter missions, with the letter "C" written next to each under "Mission Type." R. at 31. He also submitted a Department of the Army Form 20 that documented personnel information, such as assignments, duties, awards, and campaigns; that form listed the Tet Counter Offensive. R. at 32, 34-36.

In the May 2014 decision on appeal, the Board granted an initial evaluation for PTSD of 50%, but no higher, and denied an effective date earlier than August 23, 2010, the date of Mr. Emerson's construed request to reopen, for the grant of service connection for PTSD. In adjudicating the earlier effective date claim, the Board did not address the applicability of § 3.156(c), instead focusing solely on the general effective date rules set forth in 38 U.S.C. § 5110 and 38 C.F.R. § 3.400. R. at 18-20. Regarding a higher initial evaluation for PTSD, the Board determined that a 70% evaluation was not warranted. R. at 9-18. This appeal followed.

## II. PARTIES' ARGUMENTS

Mr. Emerson first argues that the Board erred by failing to ensure that VA complied with § 3.156(c). Appellant's Brief (Br.) at 12-13. The veteran contends that the plain language of § 3.156(c)(1) mandates that VA "reconsider" his claim upon the receipt of official service department

5

records that were not previously associated with the claims file. *Id.* at 14-16. The regulatory phrase "at any time," he argues, "is clear on its face" and "contains no limiting language or ambiguities pertaining to timing [that] would permit the agency to evade its mandate to reconsider by granting service connection on a different, less favorable legal theory." Reply Br. at 8-9. Mr. Emerson further contends that he was prejudiced by the Board's error because § 3.156(c), "if applied, facially supports an effective date ten years earlier than the currently assigned effective date." Appellant's Br. at 16. Second, the veteran contends that the Board provided inadequate reasons or bases because it did not adequately discuss the full range and severity of psychiatric symptoms of record when denying a PTSD evaluation in excess of 50%. *Id.* at 13-14, 18-30.

The Secretary responds that there was no error in the Board's failure to discuss § 3.156(c) because the argument the veteran is now raising on appeal was not articulated before VA. Secretary's Br. at 12-14. Even if the issue was raised, such that the Board should have considered it, the Secretary contends that § 3.156(c) is not for application on the facts of this case. Characterizing § 3.156(c)(1), the Secretary says that VA will reconsider "when VA has *denied* a claim but later receives 'relevant official service department records' that existed but had not been associated with the file at the time the claim was decided." *Id.* at 14 (emphasis added). The Secretary notes that the award of service connection in this case was not based all or in part on newly associated service department records but on a 2010 revision of § 3.304(f), which governs service connection for PTSD[4]; service department records were not associated with the claims file until 2012. *Id.* at 15-16. With respect to evaluation, the Secretary contends that the Board adequately explained its decision to deny an initial PTSD evaluation in excess of 50% and contends that Mr. Emerson is merely disagreeing with the Board's weighing of the evidence. *Id.* at 17-25.

---

[4] Section 3.304(f)(3) allows the third element of a claim for service connection for PTSD to be based on a veteran's fear of hostile military or terrorist activity. 38 C.F.R. § 3.304(f)(3) (2016).

## II. ANALYSIS

### A. 38 C.F.R. § 3.156(c)

#### 1. Mr. Emerson Raised the Applicability of 38 C.F.R. § 3.156(c) Below

The Secretary argues that the issue of the applicability of § 3.156(c) is not properly before this Court because Mr. Emerson, despite being represented by counsel at the time, failed to raise the issue below. Secretary's Br. at 12-14. The Court disagrees.

When a claimant raises an argument for the first time on appeal to this Court, and VA's institutional interests outweigh the interests of the claimant, this Court may invoke the claimant's failure to exhaust administrative remedies and decline to consider the argument. *See Scott v. McDonald*, 789 F.3d 1375, 1378-81 (Fed. Cir. 2015). However, the record shows that Mr. Emerson explicitly raised the applicability of § 3.156(c) before the Board. At the July 2012 Board hearing, when the Board member inquired as to the argument for an earlier effective date, then-counsel cited § 3.156(c) and asserted that the regulation is "not discretionary" but states that, after VA receives newly associated service department records, it "shall go back and readjudicate the final decision." R. at 116. Likewise, in a July 2012 written submission to the Board, then-counsel argued that service records[5] were associated with the claims file after the February 2003 RO decision and that this required the RO "to go back and readjudicate the original claim. 38 C.F.R. § 3.156(c)(1)." R. at 27.

Thus, the argument for § 3.156(c)'s applicability was explicitly raised below by the veteran, and the Board was obliged to consider and discuss the issue. *See Robinson v. Peake (Robinson I)*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki (Robinson II)*, 557 F.3d 1355, 1361 (Fed. Cir. 2009); *see also Brannon v. West*, 12 Vet.App. 32, 35 (1998) (concluding that the Board must "adjudicate all issues reasonably raised by a liberal reading of the appellant's substantive appeal including all documents and oral testimony in the record prior to the Board's decision"). To the extent that the Secretary contends that, to preserve the § 3.156(c) issue for judicial review, Mr.

---

[5] Although then-counsel referred to service *medical* records, it is clear that she was referring to the recently submitted service *personnel* records. *Cf. Nohr v. McDonald*, 27 Vet.App. 124, 131 (2014) (noting that "the Board should not fixate on the terminology used by veterans' counsel and lose sight of its duty to address all issues reasonably raised by the appellant or by the evidence of record").

Emerson was required to articulate as fully developed an argument before the Board as he now presents, such contention is not consistent with case law. *See Robinson I*, 21 Vet.App. at 553 ("As a nonadversarial adjudicator, the Board's obligation to analyze claims goes beyond the arguments explicitly made."); *see also Robinson II*, 557 F.3d at 1361 (holding that "[i]n direct appeals, all filings must be read 'in a liberal manner' whether or not the veteran is represented").

2. Text, Structure, and Applicability of 38 C.F.R. § 3.156(c)

Although the Board did not address the applicability of § 3.156(c) to the circumstances of this case, because that question was raised below and presents a legal issue and the relevant facts regarding applicability are not in dispute, the Court will consider this matter in the first instance. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (noting that legal determinations generally are reviewed de novo); *see also Blubaugh v. McDonald*, 773 F.3d 1310, 1312 (Fed. Cir. 2014) (deciding as a question of law whether § 3.156(c) was applicable in a case where the facts were undisputed).

Generally, a claimant may reopen a finally adjudicated claim by submitting new and material evidence. 38 C.F.R. § 3.156(a) (2016). The effective date for an award on a claim reopened on this basis is usually the date of receipt of the claim or request to reopen or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(b)(2)(i), (r) (2016). However, subsection (c) establishes an exception to these rules, the purpose of which is "to place a veteran in the position he [or she] would have been had . . . VA considered the relevant service department record before the disposition of [the] earlier claim." *Blubaugh*, 773 F.3d at 1313; New and Material Evidence, 70 Fed. Reg. 35,388, 35,389 (June 20, 2005) (proposed rule) (stating that revised § 3.156(c) will "allow VA to reconsider decisions and retroactively evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government"); *see also Pacheco v. Gibson*, 27 Vet.App. 21, 32-33 (2014) (en banc) (Pietsch, J., concurring) (noting that subsection (c) "is an exception to finality") . Subsection (c) begins:

> Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim, notwithstanding paragraph (a) of this section.

38 C.F.R. § 3.156(c)(1). As relevant here, official service department records include "service records that are related to a claimed in-service event, injury, or disease, regardless of whether such records mention the veteran by name." § 3.156(c)(1)(i). Subsection (c)(3) specifies that the effective date for "[a]n award made based all or in part on the records identified by paragraph (c)(1) of this section" may be as early as "the date VA received the previously decided claim." § 3.156(c)(3).

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has explained the steps VA must take under § 3.156(c). Paragraph (c)(1) "requires the VA to reconsider only the merits of a veteran's claim whenever it associates a relevant service department record with his [or her] claims file." *Blubaugh*, 773 F.3d at 1314. "Only if the VA grants benefits resulting from reconsideration of the merits under § 3.156(c)(1) must it consider an earlier effective date under [paragraphs] (c)(3) and (c)(4)." *Id.* In other words, (c)(3)'s discussion of the proper effective date for "[a]n award" refers to an award resulting from (c)(1)'s reconsideration of the claim's merits.

Although Mr. Emerson's ultimate goal may be to obtain an earlier effective date pursuant to (c)(3), we address in the present appeal mainly whether, in the circumstances of this case, he was entitled to reconsideration pursuant to (c)(1). Regulatory interpretation starts with the language of the regulation, the plain meaning of which is derived from its text and its structure. *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). "The canons of construction of course apply equally to any legal text and not merely to statutes." *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994). Neither party contends that the text of (c)(1) is ambiguous; both assert that the plain language supports their positions. Oral Argument Recording at 03:00-05; 55:00-05. The Court agrees that the relevant text is not ambiguous.

Paragraph (c)(1) begins with broad language: "Notwithstanding any other section in this part." The introduction of a provision by the word "notwithstanding" means that the provision so introduced will prevail over any implicated section that conflicts with it.[6] *See Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (stating that the use of a "notwithstanding" clause "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section"); *Lane v. West*, 11 Vet.App. 412, 413 (1998) (per curiam order)

---

[6] The phrase "this part" refers to part 3 of title 38, encompassing sections 3.1 to 3.2600.

(interpreting a clause beginning with "notwithstanding" to exempt CUE motions from the general rule that this Court has jurisdiction only over appeals in which an NOD was filed on or after November 18, 1988); *see also Stoll v. Nicholson*, 401 F.3d 1375, 1380 (Fed. Cir. 2005) (characterizing the language "[n]otwithstanding any other provision of law" as a "nullifying clause").

The second clause, "at any time after VA issues a decision on a claim," imposes a single limitation: that relevant records be submitted *anytime after* VA issues a decision on a claim rather than before. In the present case, there is no dispute that Mr. Emerson submitted service department records after VA had issued a decision on his claim for service connection for PTSD: the claim was initially denied in February 2003 and subsequently granted in June 2011; he submitted the service department records in July 2012. The third clause requires that the official service department records received or associated with the claims file (1) be relevant to the claim, (2) have been in existence when VA first decided the claim, and (3) not have been associated with the claims file when VA first decided the claim. Here, there is no dispute that the official service department records Mr. Emerson submitted in 2012 were arguably relevant to his claim, existed at the time VA first decided the service-connection claim in 2003, and had not been associated with the claims file when VA first decided the claim in 2003. If the requirements of these clauses are met, the ensuing operative clause mandates that "VA will reconsider the claim." 38 C.F.R. § 3.156(c)(1); *see Stewart v. Brown*, 10 Vet.App. 15, 18 (1997) (explaining that the phrase "will also be considered" is "mandatory language"); *see also United States v. UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("'Will' is a mandatory term, not a discretionary one."). Thus, based on the plain language of § 3.156(c)(1), VA was required to reconsider the veteran's claim for service connection for PTSD.

3. Arguments Counter to the Plain Language of 38 C.F.R. § 3.156(c) Are Not Persuasive

Despite the clarity of (c)(1)'s language, the Secretary argues that VA is not required to "reconsider the claim" for service connection for PTSD in this case. The Secretary's primary assertion is that § 3.156(c)(1) is not applicable in Mr. Emerson's case because he was granted service connection in June 2011, before service department records were sent to VA by the veteran and associated with his claims file. The provision, he contends, applies only "when VA has denied a claim but later receives relevant official service department records." Secretary's Br. at 14 (internal

quotation marks omitted). At oral argument, the Secretary supplemented this argument by urging that paragraph (c)(1) be read in the context of the section in which it appears, namely § 3.156, titled "New and material evidence." Oral Argument Recording at 32:40-33:17; 55:04-10. The concept of reopening a claim via the submission of "new and material evidence," the Secretary asserts, "presupposes that a claim has been denied." *Id.* at 32:42-55.

Initially, we note that the Secretary's argument—that the VA decision immediately prior to receipt of official service department records must have been a denial for § 3.156(c) to apply—confuses matters, because in this case it wrongly focuses on the claim filed in August 2010, which was granted in June 2011, rather than on the initial September 2000 claim for service connection for PTSD, which was denied in February 2003 and remained denied until 2011. Although both Mr. Emerson's 2003 original claim and his 2010 claim sought the same ultimate benefit—disability compensation based on service connection for PTSD—the language of (c)(1) makes clear that "the claim" subject to reconsideration is the original claim. Section 3.156(c)(1) references "when VA first decided the claim." This is even clearer in VA's 2005 notice of proposed rulemaking, which stated that, "[i]n practice, when VA receives service department records that were unavailable at the time of the prior decision, VA may reconsider the prior decision, and the effective date assigned will relate back to the date of the *original claim*, or the date entitlement arose, whichever is later." 70 Fed. Reg. at 35,388 (emphasis added). And this reading of (c)(1) is consistent with the fact that, if VA makes an award made based all or in part on VA's reconsideration of the official service department records, (c)(3) provides an effective date for that award of either "the date entitlement arose or *the date VA received the previously decided claim*, whichever is later." 38 C.F.R. § 3.156(c)(3) (emphasis added).

In addition, it is significant that nothing in the plain language of (c)(1) states that, for the provision to be applicable, the claim at issue must have been denied immediately prior to the submission of official service department records. Paragraph (c)(1) indicates that application of the provision begins when "VA issues a decision on a claim." It goes on to say that "VA will reconsider the claim" upon receipt of "relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim." 38 C.F.R. § 3.156(c)(1). The regulation does not say when VA issues a denial on a claim or when VA first denied a claim. "The

11

Secretary knows how to write a regulation," and we do not normally ascribe omissions to "a mistake in draftsmanship." *Meedel v. Shinseki*, 23 Vet.App. 277, 282 (2009).

Moreover, we reject the Secretary's appeal to the context of (c)(1). Although the context in which a provision appears may aid in determining its meaning, *see, e.g.*, *Tatum v. Shinseki*, 26 Vet.App. 443, 448 (2014), the problem with the Secretary's argument is that the language of subsection (c) goes out of its way to distance itself from other parts of § 3.156. Paragraph (c)(1) begins and ends with two "nullifying clause[s]," *Stoll*, 401 F.3d at 1380, the first stating that the entire paragraph operates "[n]otwithstanding any other section in this part," and the second stating that VA must reconsider a claim "notwithstanding paragraph (a) of this section." And, as the Federal Circuit has observed, "[i]n contrast to the general rule, § 3.156(c) requires . . . VA to reconsider a veteran's claim when relevant service department records are newly associated with the veteran's claims file, *whether or not they are "new and material" under § 3.156(a)*." *Blubaugh*, 773 F.3d at 1313 (emphasis added). Therefore, we find no merit in the Secretary's position and hold that the plain language of the regulation required VA to reconsider the 2003 claim.

Not only would holding § 3.156(c) inapplicable in this case be contrary to the plain language of the regulation, it would work a substantial injustice against Mr. Emerson. The primary reason Mr. Emerson's PTSD claim was granted in 2011 was due to an amendment codified at § 3.304(f)(3), which reduced the evidentiary standard in certain cases based on the acknowledgment of "the inherently stressful nature of the places, types, and circumstances of service in which fear of hostile military or terrorist activities is ongoing." 75 Fed. Reg. at 39,843; *see also Ervin v. Shinseki*, 24 Vet.App. 318, 320 (2011). The Secretary's argument is essentially that, because VA applied § 3.304(f)(3) to grant service connection, it is prohibited from applying an otherwise applicable remedial regulation, § 3.156(c)(1), in this case. If the plain language of either regulation were to compel such a result, we would be obliged to agree with the Secretary regardless of any unfairness in a particular case. But the language of neither regulation requires that outcome here. Indeed, it would be odd if § 3.304(f)(3), whose "main goal" is "'[i]mprove[d] timeliness, consistent decision-making, and equitable resolution of PTSD claims,'" *Ervin*, 24 Vet.App. at 324 (quoting 74 Fed. Reg. at 42,618), were to prevent application in this case of § 3.156(c), an otherwise pertinent

12

regulation that is premised on the notion that "'a claimant should not be harmed by an administrative deficiency of the government,'" *Mayhue*, 24 Vet.App. at 279 (quoting 70 Fed. Reg. at 38,389).

Thus, we hold that, based on the plain language of § 3.156(c)(1), upon receiving official service department records in 2012, VA was required to "reconsider the claim" for service connection for PTSD that was denied in February 2003, notwithstanding the fact that service connection for PTSD was granted in 2011. Because the Board erred as a matter of law in failing to ensure that VA complied with this regulatory obligation, the Court will set aside the portion of the May 2014 Board decision denying an earlier effective date for PTSD and remand that matter for additional development, if necessary, and readjudication consistent with this decision. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

In so holding, we offer a few final observations. At oral argument, the Secretary appeared to concede that the law to be applied during VA's (c)(1) reconsideration is current law, rather than the law that was in effect at the time the claim was previously denied, as would be the case when adjudicating a motion to reverse or revise a decision based on clear and unmistakable evidence (CUE). Oral Argument Recording at 37:39-38:35 (stating that reconsideration under (c)(1) "doesn't get rid of the intervening . . . facts and law that exist today" and that VA "is again going to readjudicate that claim based on the most efficient way to award service connection," which is based on "a medical opinion that links the veteran's PTSD to a fear of hostile military activity"); *cf. Robertson v. Shinseki*, 26 Vet.App. 169, 174 (2013) (noting that a CUE finding in a prior decision may be based on a finding that "the law then in effect was incorrectly applied"). But these statements do not provide enough legal context or analysis to permit the Court to craft a holding regarding the law to be applied during reconsideration. The Board must decide this issue on remand.

Furthermore, although the Secretary raised concerns as to the impact on VA of cases such as these, we note that this regulation was devised by VA, and the question of an earlier effective date under (c)(3) arises only if VA determines that an award is warranted based all or in part on the newly associated official service department records. *Blubaugh*, 773 F.3d at 1314. The fact that newly associated official service department records must be at least partially decisive as to an award made under (c)(1), *see* 38 C.F.R. § 3.156(c)(3), leaves unresolved a critical question as to whether the records in this case satisfy that requirement.

13

However, the question of whether the service records associated with Mr. Emerson's claims file in 2012 satisfy the requirement of "an award based all or in part on the newly associated official service department records," § 3.156(c)(3), is one that the Court is not capable of resolving. Resolution of this question would involve initial fact finding, and this is therefore not the appropriate forum for such resolution to occur.[7]   Because the meaning and significance of the service records submitted by the veteran to VA in 2012 are factual issues that must be addressed by the Board in the first instance, the Court expresses no opinion on them.  *See*  38 U.S.C. § 7261(c); *Kyhn v. Shinseki*, 716 F.3d 572, 577-578 (Fed. Cir. 2013) (declaring that this "Court's fact finding in the first instance exceeded its jurisdiction to review the Board based on the record before the Board"); *Shipley v. Shinseki*, 24 Vet.App. 458, 464-465 (2011) (vacating the Board's denial of an earlier effective date for service-connected PTSD and remanding for the Board to "address the applicability of § 3.156(c) in the first instance" where "the Board has not yet made any factual findings pertinent to the application of this regulation"); *see also Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (noting "the general rule that appellate tribunals are not appropriate fora for initial fact[]finding").

In sum, although the Court ventures no opinion as to the merits of VA's reconsideration of the claim under (c)(1), or the availability of an earlier effective date under (c)(3), we reiterate our holding that, upon receiving official service department records in 2012, and notwithstanding the fact that service connection for PTSD was granted in 2011, VA was required pursuant to (c)(1) to "reconsider the claim" for service connection for PTSD that was denied in February 2003, and the Board erred in failing to ensure that VA complied with this obligation.

## B. Higher Initial Disability Evaluation

Mr. Emerson also argues that the Board provided inadequate reasons or bases for denying an initial PTSD evaluation in excess of 50% by failing to undertake the proper analysis for assigning evaluations to mental disorders and by failing to discuss relevant, favorable evidence.  Appellant's

---

[7] For example, although Mr. Emerson asserts that the letter "C" in the Air Medal Worksheet indicates that his helicopter missions were combat, Reply Br. at 2, the Secretary maintains that "C" denotes transport missions, Oral Argument Recording at 38:40-39:11.  There is nothing in the Board decision or the record before the Court that settles this dispute.  Nor did the Board decision address the notation of Tet Counter Offensive in the veteran's Form 20, which was associated with the claims file at the same time as the Air Medal Worksheet, R. at 35.

Br. at 18-30; Reply Br. at 10-15. Applying well-settled law, we agree that this matter must be set aside and remanded for readjudication.

The Board must provide a statement of the reasons or bases for its determination adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court. 38 U.S.C. § 7104(d)(1); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence that it finds persuasive or unpersuasive, and provide reasons for its rejection of any material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

When assigning a disability evaluation for PTSD, the Board must consider the veteran's condition in light of the rating criteria found in 38 C.F.R. § 4.130, Diagnostic Code (DC). *See Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 114 n.1 (Fed. Cir. 2013). Here, the Board determined that Mr. Emerson's PTSD was 50% disabling in accordance with the factors listed in DC 9411 for that level of impairment, namely:

> Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

38 C.F.R. § 4.130, DC 9411 (2016). The Board determined that Mr. Emerson's PTSD did not more closely approximate the criteria for a 70% evaluation under DC 9411, namely:

> Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

*Id.*

15

Use of the term "such as" in the criteria for § 4.130 evaluation indicates that the list of symptoms that follows is "non-exhaustive," meaning that VA is not required to find the presence of all, most, or even some of the enumerated symptoms to assign to a 70% evaluation. *Vazquez-Claudio*, 713 F.3d at 115; *see also Sellers v. Principi*, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004); *Mauerhan v. Principi*, 16 Vet.App. 436, 442 (2002). However, because "[a]ll nonzero disability levels [in § 4.130] are also associated with objectively observable symptom[s]," and the plain language of the regulation makes it clear that "the veteran's impairment must be 'due to' those symptoms," "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." *Vazquez-Claudio*, 713 F.3d at 116-17. "[I]n the context of a 70[%] rating, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." *Id.* at 117. Thus, assessing whether a 70% evaluation is warranted requires a two-part analysis: "The . . . regulation contemplates[: (1)] initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation[; and (2)] an assessment of whether those symptoms result in occupational and social impairment with deficiencies in most areas." *Id.* at 118.

In the present case, the Board determined that a 70% evaluation for PTSD was not warranted as follows:

> The claims file shows that the [v]eteran is currently working. During the January 2011 examination, his relationship with his supervisor and co-workers was noted as being fair. Also, the January 2012 examiner noted that the [v]eteran did not have symptoms like impaired judgment or thinking, gross impairment in thought processes or communication, suicidal ideation, neglect of personal appearance and hygiene, or intermittently illogical, obscure, or irrelevant speech. Finally, during his July 2012 hearing, the [v]eteran stated that he used to get in fights when he was "a lot younger" but is not doing that anymore. He also indicated that he is having less suicidal thoughts. He also added that he did not have illogical speech, and did not recently get panic attacks.

R. at 15-16 (citations omitted).

Mr. Emerson notes several purportedly favorable pieces of evidence that relate to the 70% criteria that the Board did not discuss. For example, the veteran observes that the Board did not mention the June 2002 notation that the veteran compulsively locked and rechecked house and car

locks, R. at 364, even though the 70% criteria lists "obsessional rituals which interfere with routine activities."  Similarly, the veteran contends that the Board, although finding that the January 2012 examination did not find evidence of symptoms such as suicidal ideation or illogical speech, failed to discuss evidence of these symptoms contained in the January 2012 examination and the July 2012 testimony before the Board.  R. at 33, 366.  The veteran's principal brief argues these and other omissions in detail, *see* Appellant's Br. at 18-30, and we need not recount them all here.  Moreover, the Court notes that the Board did not cite the evidence presented in the June 2002 private medical opinion.  Based on the Court's holding in Part II.A.2, *supra*, that VA is obliged to "reconsider the claim" pursuant to § 3.156(c)(1), the Board may deem such evidence pertinent to any retroactive award assigned.  Thus, for these reasons, and the reasons set forth in the veteran's briefs, the Court agrees that the Board's reasons or bases for not assigning a 70% evaluation were inadequate.  Accordingly, this portion of the Board decision will be set aside and remanded for additional development, if necessary, and readjudication.  *See Tucker*, 11 Vet.App. at 374.

On remand, Mr. Emerson is free to present any additional arguments and evidence to the Board in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).  *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).  The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## III.  CONCLUSION

After consideration of the parties' briefs, the record on appeal, and the governing statutes, regulations, and case law, the May 12, 2014, Board decision is SET ASIDE, and the matters are REMANDED for additional development, if necessary, and readjudication consistent with this decision.