# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-6336

CHARLES G. REYNOLDS, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 11, 2025)                    Decided December 16, 2025)

*Scott A. Schulman*, with whom *Glenn R. Bergmann* and *J. Corey Creek*, all of Rockville, Maryland, were on the brief for the appellant.

*Angelica G. Banks*, with whom *Richard J. Hipolit*, Principal General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, *Chief Judge*, and PIETSCH and JAQUITH, *Judges*.

ALLEN, *Chief Judge*, filed the opinion of the Court. PIETSCH, *Judge,* filed an opinion concurring in the result. JAQUITH, *Judge*, filed a concurring opinion.

ALLEN, *Chief Judge*: The issue before us today concerns one of the downstream elements associated with the award of VA disability benefits—the effective date. An effective date is determined only after a benefit has been awarded, and it is the day on which a claimant's benefit payments begin. Generally, "the effective date of an award . . . shall be fixed in accordance with the facts found but shall not be earlier than the date of receipt of application therefor."[1] However, there are exceptions to that general rule. These effective date exceptions can be powerful because, if one applies, a claimant could obtain an effective date days, months, or even years earlier than what the general rule provides. The exception at issue here involves the situation when a previously decided claim is reconsidered because VA receives newly obtained service department records.[2] Specifically, that exception under 38 C.F.R. § 3.156(c)(3) provides that if an award of benefits is "based all or in part on" newly obtained service department records submitted under § 3.156(c)(1),

---

[1] 38 U.S.C. § 5110(a)(1).

[2] 38 C.F.R. § 3.156(c)(3) (2025).

a claimant may be entitled to an effective date as early as "the date VA received the previously decided claim."[3]

Appellant Charles J. Reynolds served the Nation honorably in the U.S. Army from February 1966 to December 1968, including service in Vietnam.[4] Among several other awards, appellant earned a Purple Heart, an Army Commendation Medal, and the Combat Infantryman Badge.[5] In this appeal, which is timely and over which the Court has jurisdiction,[6] he contests an August 30, 2023, Board of Veterans' Appeals decision that denied entitlement to an effective date before May 21, 2020, for the award of service connection for bilateral hearing loss.[7] This matter was referred to a panel of the Court to address whether entitlement to an earlier effective date under § 3.156(c)(3) may be warranted when newly associated service department records satisfying the requirements for reconsideration under § 3.156(c)(1) are linked, even in a supportive way, to the ultimate award of benefits. We held oral argument on September 11, 2025, at the National Organization of Veterans' Advocates (NOVA) Fall 2025 conference in Washington, D.C.[8] We thank NOVA for inviting the Court to hold oral argument at the conference.

As we will explain, we hold that the plain language of § 3.156(c)(3) provides that the effective date exception applies in situations when newly associated service department records under § 3.156(c)(1) are linked, even in a supportive way, to the ultimate award of benefits. Such records need not be listed as the reason for the decision at issue. Stated differently, and as we explain in detail below, if the newly associated service records are a link in the chain of events that leads to an award of benefits via reconsideration under § 3.156(c)(1), the exception under subsection (c)(3) may apply. Because we can't tell if the Board approached the issue concerning an earlier effective date under subsection (c)(3) as we hold is required under the law, its statement of reasons or bases is inadequate. So, we will set aside the Board's decision and remand this matter for further proceedings consistent with this opinion.

---

[3] *Id*.

[4] Record (R.) at 672.

[5] *Id*.

[6] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[7] R. at 5-10.

[8] *See* Oral Argument (OA), https://www.youtube.com/watch?v=ZvWAAcMRuec.

## I. BACKGROUND

During service, appellant's military occupational specialty (MOS) was light weapons infantry specialist.[9] Service treatment records from October 1968 reflect that appellant was "exposed to [an] RPG blast," and "[n]ow he has loss of hearing."[10] Upon separation, in December 1968, appellant reported hearing loss in a report of medical history.[11]

In August 1990, appellant filed his initial claim for service connection for bilateral hearing loss.[12] In a February 1991 rating decision, a VA regional office (RO) denied the claim because "service medical records [were] negative for any chronic hearing loss while in service," and the "[s]eparation exam from active duty service [was] negative for hearing loss."[13] Appellant did not appeal that decision, and it became final.

Almost 30 years later, in May 2020, appellant sought to reopen his hearing loss claim.[14] Appellant submitted a VA Form 21-526EZ application for disability compensation to VA in which he listed bilateral hearing loss as his current disability and stated that it began after the 1968 in-service blast.[15] Along with his May 2020 application, appellant submitted copies of service records reflecting his award of the Bronze Star Medal with V device and the Army Commendation Medal with V device.[16] Appellant asked VA to "use this evidence as proof of combat."[17] Two months later, on July 1, 2020, appellant filed a supplemental claim, requesting the Board address his claim for bilateral hearing loss and listing March 1991 as the date of the decision he was seeking to reopen.[18] Appellant submitted a separate statement in support of claim along with his July 2020 supplemental claim form, asking VA to "[p]lease reopen my claim for bilateral hearing loss."[19]

---

[9] R. at 672.

[10] R. at 614-15 (Oct. 1968 service record).

[11] R. at 592-94.

[12] R. at 556-59.

[13] R. at 515. The rating decision is dated February 14, 1991, but the notice letter that accompanied the decision was mailed to appellant on March 7, 1991. R. at 507.

[14] R. at 483-87.

[15] R. at 484.

[16] R. at 480, 482.

[17] R. at 478.

[18] R. at 417-30.

[19] R. at 415.

3

At an August 2020 VA medical examination,[20] the VA examiner diagnosed appellant with bilateral hearing loss and opined that it was at least as likely as not caused by appellant's military service. Specifically, the VA examiner noted appellant's MOS of light weapons infantry and that he earned a Combat Infantryman Badge and Purple Heart. The examiner explained that appellant "had a high probability of exposure to hazardous noise," and that "[i]t is conceded that [appellant] was likely exposed to noise levels that could have produced permanent hearing damage."[21] The examiner also recounted appellant's service records recording his exposure to an RPG blast and noted the worsening of appellant's hearing loss between enlistment and separation from service.[22]

On August 28, 2020, the RO granted appellant's claim for bilateral hearing loss, explaining that "new and relevant evidence has been received and [appellant's] claim is now reconsidered."[23] The RO assigned a 70% disability rating, explaining that the August 2020 VA examination report noted symptoms that warrant such a rating. Further, the RO informed appellant that "[s]ervice connection is warranted because your hearing loss has been related to your MOS of [l]ight [w]eapons [i]nfantry and combat noise exposure."[24] The RO further stated that because appellant was "in receipt of the Purple Heart, Combat Infantry[man] Badge; therefore, MOS and combat noise exposure is conceded."[25] Then, the RO assigned an effective date of July 1, 2020, the date that appellant filed the supplemental claim.[26] Appellant challenged the assigned effective date and appealed to the Board.[27]

In September 2022, the Board awarded an effective date of May 21, 2020, the date appellant first filed a claim to reopen.[28] The Board acknowledged appellant's assertions that he is entitled to an effective date of February 14, 1991, the date the RO first denied his claim for service connection for bilateral hearing loss. The Board explained that because the February 1991 RO decision became final, he can only reopen his claim "through the submission of new and material

---

[20] R. at 344-55.

[21] R. at 348.

[22] *Id.*

[23] R. at 337.

[24] *Id.*

[25] *Id.*

[26] R. at 336-40.

[27] R. at 289 (Notice of Disagreement & Board appeal), 293-96 (supplemental claim).

[28] R. at 62-66.

evidence, *see* 38 C.F.R. § 3.156, which occurred in this case[,]" or "through a successful [motion to revise an earlier decision based on] clear and unmistakable error (CUE)."[29] The Board concluded that there is no evidence that appellant filed a CUE motion and that because appellant first filed his claim to reopen on May 21, 2020, that is the earliest effective date it could assign.[30] Appellant appealed that decision to the Court.

In July 2023, the Court granted the parties' joint motion for a partial remand (JMPR), in which they agreed that the Board erred and provided inadequate reasons or bases for its denial of an effective date before May 21, 2020, when it failed to discuss whether § 3.156(c) applied.[31] The parties agreed that remand was warranted for the Board to address whether § 3.156(c) was implicated by the submission of the service personnel record attached to the claim form in July 2020.[32]

On August 30, 2023, the Board issued the decision on appeal. The Board denied entitlement to an effective date before May 21, 2020, for service-connected bilateral hearing loss. The Board explained that appellant's August 1990 claim was denied in February 1991 and the record contains no correspondence related to that claim until May 21, 2020, when VA received appellant's VA Form 21-526EZ (appellant's claim to reopen). The Board stated that the filing of that May 2020 form "prompted the RO's August 2020 rating decision granting the award of service connection for bilateral hearing loss and assigning a disability rating effective July 1, 2020, the date VA received [appellant's] [s]upplemental [c]laim."[33] The Board further explained that appellant's appeal of the August 2020 rating decision to the Board "prompt[ed] the September 2022 decision within which the Board granted an earlier effective date of May 21, 2020" for service-connected bilateral hearing loss.[34] Thereafter, the Board stated that "[t]here is no doubt that [appellant's] claim to readjudicate service connection for hearing loss was received on May 21, 2020, and prior to this date[,] there were no pending or unadjudicated claims pertaining to hearing loss."[35] To comply

[29] R. at 64.

[30] R. at 65-66.

[31] R. at 23-27.

[32] R. at 24.

[33] R. at 8.

[34] *Id.*

[35] *Id.*

5

with the JMPR, the Board discussed § 3.156(c), concluding that appellant's grant of service connection for bilateral hearing loss was ultimately based on his MOS and combat noise exposure, "as evidenced by his receipt of a Purple Heart and Combat Infantry[man] Badge[,] as well as a positive nexus opinion obtained through a VA examination."[36] The Board continued to conclude that appellant's

> grant of service connection for bilateral hearing loss was *not* made based *in any part* on the additional military personnel record referencing February 1969 receipt of '[t]he Army Commendation Medal with "V" [d]evice.' Significantly, this was not even one of the medals cited by the RO within the August 2020 rating decision granting benefits. Thus, the Board finds the persuasive weight of the evidence is against finding the provisions regarding an earlier effective date due to receipt of relevant service records under 38 C.F.R. § 3.156 are applicable here.[37]

This appeal followed.

## II. PARTIES' ARGUMENTS

### A. Appellant

Appellant argues that the Board clearly erred when it found that he is not entitled to an effective date before May 21, 2020, under § 3.156(c)(3). Contrary to the Board's findings, appellant asserts that the RO's September 2020 decision granting service connection for bilateral hearing loss was *based in part on* the newly acquired service personnel records he submitted with his May 2020 request to reopen his claim.[38] Appellant explains how he believes the newly acquired service records are causally linked to his ultimate award of benefits. First, appellant highlights that the RO denied his initial claim for service connection for bilateral hearing loss in February 1991, and it was because "'service medical records are negative for any chronic hearing loss in service.'"[39] Second, appellant explains that when he sought to reopen his claim in May 2020, he submitted evidence (that the Board concedes was not part of the record in 1991) detailing specific in-service instances of combat noise exposure. Third, in August 2020 the RO reopened his claim because the newly acquired evidence was "new and relevant'" and granted service connection for bilateral

---

[36] R. at 9.

[37] *Id*. (emphasis in original).

[38] Appellant's Brief (Br.) at 14.

[39] *Id*. at 10 (citing R. at 337); *see* R. at 511.

hearing loss for two reasons: (1) appellant's hearing loss was found to be related to his MOS and conceded combat noise exposure and (2) the August 2020 VA positive medical opinion relates his hearing loss to service. Appellant asserts that linking these facts together demonstrates that his ultimate award of benefits was at least based *in part on* the newly acquired service records.[40] In other words, because appellant's ultimate award of benefits was "based in part on" the now conceded in-service noise exposure (a missing element of service connection in February 1991), there is a causal link between the newly submitted service department records and the award of benefits—the newly acquired service department records are relevant, or at least speak to one of the reasons why his claim was ultimately granted.

Appellant also offers an alternative causal chain, asserting that the newly associated service records led to the development of dispositive evidence: VA obtained the August 2020 VA positive nexus opinion, which is also *part* of the reason he ultimately was awarded benefits. Regardless of which causal chain is followed, appellant asserts that the records clearly played "some role" in the ultimate award of benefits and that is enough to establish entitlement to the effective date exception under § 3.156(c)(3).

During oral argument, appellant maintained his briefing position and argued that because there are no factual findings in dispute, the Court should reverse the Board's decision that an earlier effective date under § 3.156(c)(3) was not warranted. However, he also agreed that if the Court were to find that any additional factual inquiries were required, remand is appropriate.[41]

### B. Secretary

In his brief, the Secretary asserted that because the newly acquired service department records played no role in the ultimate award of benefits, the Board did not err when it found that appellant was not entitled to an earlier effective date under § 3.156(c)(3) and provided adequate reasons or bases to support its decision. While still defending the Board's decision, at oral argument the Secretary shifted his position somewhat. In particular, the Secretary contended that the plain meaning of "based . . . in part on" in § 3.156(c)(3) requires the Board to determine whether the agency's decision "substantially relied" on the newly associated service department records in the ultimate award of benefits.[42] Continuing this argument, the Secretary insists that the Board

---

[40] Appellant's Br. at 13-14.

[41] OA at 6:00-7:33.

[42] *Id.* at 22:05-25:20. To be clear, the Secretary's briefs did not discuss this idea of "substantial reliance;" it was only

properly relied on the fact that the RO did not cite the newly associated service department records in its decision granting service connection, apparently because that shows that the RO did not substantially rely on them. In sum, the Secretary asserts that to read the plain language of § 3.156(c)(3) as appellant suggests would blur the lines between § 3.156(c)(1) and (c)(3), which the Federal Circuit has made clear are distinct regulatory provisions.

## III. ANALYSIS

We begin by underscoring that the only issue before us today concerns how the general effective date exception operates under § 3.156(c)(3). Entitlement to reconsideration under § 3.156(c)(1) is not at issue.[43] VA found reconsideration of appellant's previously denied claim was warranted based on the receipt of new and relevant evidence,[44] which necessarily means that VA found the newly associated service department records to be relevant to warrant reconsideration under § 3.156(c)(1).[45] These are favorable findings that the Court lacks jurisdiction to review.[46]

---

mentioned during oral argument.

[43] We understand that our colleague concurring only in the judgment disagrees that we can confidently determine that VA has reconsidered appellant's claim. *See post* at 21 (Pietsch, J., concurring in the judgment). We disagree. As we explain in the text, we think the record is sufficient to conclude VA did reconsider the claim. Moreover, concluding that VA granted appellant benefits following reconsideration is the most favorable way to consider the matter for appellant. The only way (other than through a motion to revise an earlier decision based on CUE, which is not at issue here, *see* R. at 64) he could ever seek to obtain an earlier effective date for his benefits under subsection (c)(3) is if he had first had his claim reconsidered under (c)(1) that led to a grant. So, questioning the most natural reading of what occurred here could potentially harm appellant. In addition, both parties agree that it was appellant's submission of newly associated service records that served as the basis for reconsideration, which necessarily implicates § 3.156(c)(1). *See* Appellant's Supp. Br. at 9-10; Secretary's Supp. Br. at 2. And because the parties have not sought to raise any error about the application of subsection (c)(1), we should not step into their shoes to do so. *See Frantzis v. McDonough*, 35 Vet.App. 354, 366 (2022) ("Courts generally should not advance arguments for represented parties when such parties have declined to do so themselves. More directly: [C]ourts should not be advocates."), *aff'd* 104 F.4th 262 (Fed. Cir. 2024).

[44] R. at 337, 56-57.

[45] Indeed, the issue was reasonably raised by the veteran's May 2020 submission of his Bronze Star Medal with V device, his Army Commendation Medal with V device, and his discharge certificate reflecting his Purple Heart Medal and Combat Infantryman Badge, R. at 420-27, and more directly by his September 2020 request for an effective date of February 14, 1991, because "VA did not do it's due diligence when I applied for my compensation in 1991 in referring to my service treatment records and personnel records from my Vietnam service when they made their initial decision." R. at 295; *see Robinson v. Peake,* 21 Vet. App. 545, 552 (2008) ("the Board is obligated to consider all issues reasonably raised in an appeal")*, aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009); *Emerson v. McDonald*, 28 Vet.App. 200, 206 (2016) (applying *Robinson* in describing when the Board is obliged to address the applicability of § 3.156(c)).

[46] *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part*, *dismissed in part sub nom*. *Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009).

Additionally, the record reflects that the August 2020 RO concluded that "new and relevant" evidence received was sufficient to reconsider appellant's claim, while the September 2022 Board found that appellant's claim had been reopened through the submission of "new and material" evidence, citing § 3.156.[47] The Secretary concedes that "the Board's reference to 'new and material evidence' having been submitted to reopen [appellant's] claim should be read as simply a mistaken reference to an non-applicable regulatory provision, and the Court should afford it no particular probative value."[48] The parties generally agree that this imprecise language has no impact on the issue on appeal because, regardless of what standard was used to reconsider appellant's claim (legacy or AMA), VA (although implicitly) unquestionably reconsidered the claim under § 3.156(c)(1), and, as we've said, that is a finding that we cannot revisit.[49] Most importantly, the September 2022 Board decision found that the February 1991 rating decision had been reopened under § 3.156 but failed to address that regulation in granting a May 2020 effective date,[50] a JMPR was granted for the Board "to discuss whether § 3.156(c) was implicated" by the veteran's submission of service records,[51] and the August 2023 Board decision on appeal expressly denied an earlier effective date based on its application of § 3.156(c) to its findings of fact.[52]

With these preliminary matters out of the way, we can move to the heart of the analysis. We will begin by returning to the law concerning effective dates generally and how we review effective date determinations. Next, we will discuss the regulatory history of § 3.156(c) and what that history tells us about that regulation. Then, we will focus on subsection (c)(3) in particular. We will explain why we conclude that if there is a causal link between the newly acquired service

---

[47] *Compare* R. at 337 (Aug. 2020 rating decision), *with* R. at 40 (Sept. 2022 Board decision). Before the passage of the Veterans Appeals Improvement and Modernization Act of 2017 (AMA), effective February 19, 2019, VA reopened final decisions (previously decided claims) based on "new and material" evidence, in the legacy appeals system. Pub. L. 115-55, 131 Stat. 1105 (codified as amended in scattered sections of 38 U.S.C.); *see* 38 C.F.R. § 3.156(a). Now, under the AMA, claimants must file a supplemental claim and submit "new and relevant evidence" to obtain readjudication of a final decision. 38 C.F.R. § 3.156(d).

[48] Secretary's Supp. Br. at 11. The Secretary explained that the Board recited the evidentiary standards applicable to the legacy appeal system rather than those applicable to AMA appeals. Appellant filed his initial request for reconsideration in May 2020, well after February 19, 2019, when the AMA appeal system went into effect. *See Id*. at 10.

[49] *Medrano*, 21 Vet.App. at 170; *see* Appellant's Supp. Br. at 8-9; Secretary's Supp. Br. at 9-14. Of note, appellant asserts that he initially filed his claim to reopen using legacy procedures in May 2020, but VA promptly notified him that he was required to resubmit his request using AMA procedures. *See* Appellant's Supp. Br. at 1.

[50] R. at 62-66.

[51] R. at 23-27.

[52] R. at 5-10.

9

department records and the ultimate award of benefits (apart from the mere fact that the service department records are sufficient to warrant reconsideration under subsection (c)(1)), an earlier effective date is possible under subsection (c)(3). Finally, we will explain why remand, not reversal, is the appropriate remedy here.

## A. Effective Dates

Section 5110 governs the assignment of an effective date for an award of benefits. As we stated earlier, generally "the effective date of an award based on an initial claim, or a supplemental claim . . . [is] fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."[53] VA's implementing regulation similarly provides that "the effective date of an evaluation and award of . . . compensation . . . based on an initial claim or supplemental claim will be the date of receipt of the claim or the date entitlement arose, whichever is later."[54] However, there are exceptions to this general rule, one of which is provided in § 3.156(c).

Before we explore that regulatory exception, we pause to highlight certain familiar contours of the legal landscape. The Board's determination of an effective date is a factual question that we review for clear error.[55] For all its findings on material issues of fact and law, the Board must support its factual determinations and legal conclusions with a written statement of reasons or bases that is "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court."[56] If the Board fails to do so, remand is appropriate.[57]

## B. History of § 3.156(c)

Section 3.156(c)(1) provides that "if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim."[58] Such records include service records related to an in-service event or records forwarded by the service department to VA at any

---

[53] 38 U.S.C. § 5110(a)(1); *see also* 38 C.F.R. § 3.400(b)(2) (2025).

[54] 38 C.F.R. § 3.400.

[55] 38 U.S.C. § 7261(a)(4); *see McGrath v. Gober*, 14 Vet.App. 28, 35 (2000); *see also Evans v. West*, 12 Vet.App. 396, 401 (1999).

[56] *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

[57] *Tucker v. West*, 11 Vet.App. 369, 374 (1998).

[58] 38 C.F.R. § 3.156(c)(1).

10

time after VA's original request for service records. And when VA reconsiders a previously decided initial claim under § 3.156(c)(1) and thereafter grants benefits, § 3.156(c)(3) provides that an earlier effective date may be warranted.

Section 3.156(c)(3) provides in full:

An award made *based all or in part on* the records identified by paragraph (c)(1) of this section is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later, or such other date as may be authorized by the provisions of this part applicable to the previously decided claim.[59]

While the language of subsection (c)(3) is ultimately what dictates the outcome here, the regulatory context is helpful to set the stage. In that regard, in 2005, VA proposed amending § 3.156(c), including subsections (c)(1)-(c)(4), to clarify the rules regarding reconsideration of a previously decided claim based on newly associated service department records. VA explained that the intent behind the clarifications was to "allow VA to reconsider decisions and retroactively evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government."[60] VA also explained that subsection (c)(3) was intended to eliminate any ambiguity in § 3.156(c) as whole because, as the regulation was written at the time, it "may be read as requiring an earlier effective date for the award of benefits upon reconsideration only when the basis for the award is newly discovered service department records."[61] VA also wanted to "avoid conflict with [the general rule for effective dates] which specifically limits the effective date of an award based on corrected service department records to no earlier than one year before the date on which the previously disallowed claim was reopened."[62] VA further clarified that the language proposed for subsection (c)(3), which remains as it is today, meant that subsection (c)(3) would apply "in cases where a veteran files a claim for disability compensation, which VA denies because there is no evidence of an in-service injury. Years later, if VA receives service department records that show an in-service injury, and obtains a medical opinion that links that injury to the claimant's current disability, it would grant service

---

[59] 38 C.F.R. § 3.156(c) (emphasis added).

[60] New and Material Evidence, 70 Fed. Reg. 35388, 35,389 (June 20, 2005). The amendments to § 3.156(c) became effective in 2006. *See* New and Material Evidence, 71 Fed. Reg. 52455 (Sept. 6, 2006).

[61] *Id.*

[62] New and Material Evidence, 70 Fed. Reg. at 35389.

11

connection."[63] So, even if the medical opinion was not a document that satisfied proposed (c)(1), "the service department record showing incurrence, which provided the basis for the medical opinion, is such a document."[64]

In *Blubaugh v. McDonald*,[65] the Federal Circuit underscored that § 3.156(c) "serves to place a veteran in the position he [or she] would have been had [ ] VA considered the relevant service department record before the disposition of his earlier claim."[66] The Federal Circuit explained: that subsection (c)(1) "is a separate and distinct provision from subsection[] (c)(3);" that "[t]he language and overall structure of § 3.156(c) strongly suggest that § 3.156(c)(1) requires . . . VA to reconsider only the merits of a veteran's claim" whenever newly acquired relevant service records are associated with the claims file; and that "[o]nly if [] VA grants benefits resulting from reconsideration of the merits under § 3.156(c)(1) must it consider an earlier effective date under subsection[] (c)(3)."[67]

Approximately 2 years later, in *Emerson v. McDonald*, our Court emphasized the distinction between subsections (c)(1) and (c)(3), stating that the operative clause in § 3.156(c)(1) "mandates that 'VA will reconsider the claim'" at any time after it issues a decision on a claim if it receives relevant service department records not previously associated with the claims file.[68] In *Emerson*, we held that reconsideration under §3.156(c)(1) is warranted in a situation where newly acquired service records were submitted after a claim had been initially denied and later granted based on a liberalizing law. We relied on *Blubaugh* and explained that there is only one limitation in paragraph (c)(1)—that the relevant records be submitted "at *any time after* VA issues a decision on a claim."[69] We further explained that "newly associated official service department records

---

[63] *Id.*

[64] *Id.*

[65] 773 F.3d 1310, 1313 (Fed. Cir. 2014).

[66] *Id.* (noting that the purpose of reconsideration under § 3.156(c) is to "ensure[] that a veteran is not denied benefits due to an administrative error" and to place him "in the position he would have been had [the] VA considered the relevant service department record before the disposition of his earlier claim.").

[67] *Id.* (emphasis omitted).

[68] 28 Vet.App. 200, 208 (2016) (quoting 38 C.F.R. § 3.156(c)(1)(effective Oct. 6, 2006, to Feb. 18, 2019)).

[69] *Id.* (emphasis added).

must be at least partially decisive as to an award made under (c)(1)" before the question of an earlier effective date under (c)(3) arises.[70]

And two years after *Emerson*, we decided *George v. Shulkin*, in which we explained that "reconsideration" under paragraph (c)(1) requires VA to reassess the original decision "in light of the new service records" and noted that this may also include the development of additional evidence.[71]  The Court further determined that had the Board "skipped past § 3.156(c)(1), which demands reconsideration of the original claim, and [gone] straight to § 3.156(c)(3), which deals with the effective date of a claim granted via reconsideration," that would "indicate that [the Board] did not understand the relevant legal framework."[72]

In considering the regulatory history and judicial interpretations of § 3.156(c) thus far, we know that the purpose of VA's regulation was to correct any harm that a claimant may have suffered in situations when VA failed to obtain existing relevant service department records. Moreover, we also know that once VA has determined that newly associated service department records satisfy § 3.156(c)(1), VA must reconsider the previously decided claim including potentially developing additional evidence. And finally, we know that VA proposed § 3.156(c)(3) so that claimants could obtain an earlier effective date in the instance that a claimant was ultimately awarded benefits via § 3.156(c)(1) reconsideration even when the award was made only in part based on the newly associated records. Having considered § 3.156(c) as a whole, we now turn to subsection (c)(3) in particular.

### C. What does "based all or in part on" mean in § 3.156(c)(3)?

The key part of subsection (c)(3) for purposes of this appeal is the regulatory language that provides that an earlier effective date is warranted when an award is made "based all or in part on" on the newly associated service department records. But what precisely does this phrase mean? Our task today is to answer that question.[73]

---

[70] 28 Vet.App. at 210.

[71] 29 Vet.App. 199, 205 (2018), *vacated on other grounds sub nom. George v. Wilkie*, 782 F. App'x 997 (Fed. Cir. 2019); *see also George v. Wilkie*, 32 Vet.App. 318 (2020).

[72] 29 Vet.App. at 205.

[73] We note that the Federal Circuit has held that consideration of an earlier effective date under § 3.156(c)(3) is available only if the award of benefits is "'based all or in part' on the newly obtained records." *Flores-Vazquez v. McDonald*, 996 F.3d 1321, 1322 (Fed. Cir. 2021). But the Federal Circuit has not explained what the phrase "based . . . in part on" means, leading us back to the question we address today.

13

The question about what "based all or in part on" in § 3.156(c)(3) means is one of regulatory interpretation, which is a question of law that we review de novo.[74] The basics of regulatory interpretation are well-established. We look first to the text and structure of a regulation, which is the best indication of its plain meaning.[75] If the plain meaning of the regulation is clear on its face, then such plain meaning controls, and "that is 'the end of the matter.'"[76]

While the plain language of a regulation is at the core of the interpretive effort, it is not uncommon for courts to consider other things to assess a regulation's meaning when the text alone does not provide a definitive answer to the interpretive inquiry. In other words, regulatory interpretation requires the Court to "bring all its interpretative tools to bear" and to "make a conscientious effort to determine, based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning."[77] A regulation is not ambiguous simply because both parties insist that the plain meaning supports his or her position and neither party's interpretation is unreasonable to the Court.[78]

Recall the parties' positions on the meaning of subsection (c)(3). Appellant asserts that the phrase "based . . . in part on" means that as long as the award of benefits can be linked, in any way (in part on), to the newly acquired service department records that is enough to warrant entitlement to an earlier effective date. Essentially, appellant asserts that "based . . . in part on" works like an causal chain, and as long as that chain remains intact, an earlier effective date is possible. During oral argument, appellant emphasized that "in part" means that the contents of the newly acquired service department records "does not need to be the only factor, it does not have to be primary factor, it does not have to be anything more than part of what led to the grant of service connection

---

[74] *See Foster v. McDonough*, 34 Vet.App. 338, 344-45 (2021). We will not discuss the part of the phrase concerning an award that is "based *all* . . . on" newly associated service department records. There is no question that the grant of benefits here was not based *all* on the newly associated service department records. The parties agree and the record reflects that VA's earlier decisions relied on the VA medical opinion obtained after the claim was reopened under § 3.156(c)(1) to establish the nexus element of service connection. Therefore, we need not discuss what "all" means in this decision. Rather, our focus is on what it means for an award of benefits to have been "based . . . in part on" newly associated service department records.

[75] *See Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[76] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120, (1994)); *see also Kisor v. Wilkie*, 588 U.S. 558, 575 (2019).

[77] *Kisor*, 588 U.S. at 590; *see Savage v. Shinseki,* 24 Vet.App. 259, 265 (2011) (citing *Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 64 (4th Cir.1993) ("Regulations, like statutes, are interpreted according to canons of construction.")).

[78] *Kisor,* 588 U.S. at 589.

14

for hearing loss."[79] In contrast, the Secretary insists that "based . . . in part" requires more than a causal link; it requires that the adjudicator substantially rely on the newly associated service records when making an award. In that regard, the Secretary asserts that substantial reliance means that VA must have used the information provided in the newly obtained service department records in the decision granting the benefit being sought.[80] While we don't endorse his position entirely, we think appellant has the better view of how subsection (c)(3) operates.

Before we delve into the interpretative effort too deeply, we can make a common sense observation about how subsection (c)(3) operates. It seems beyond contravention that, at a minimum, an award must at least be predicated in some way on the newly associated service department records. But we need not just rely on our common sense. The Federal Circuit made the point clear in *Flores-Vazquez v. McDonough,* where it held that if the award is "'not predicated in any way on records that were not before [the VA] at the time of the initial decision on the claim,' then 'the proper effective date [is] the date of the request for reopening, not the date of the initial claim.'"[81]

That brings us back to the most operative part of the phrase at issue, which is "based . . . in part on." In situations where a disputed phrase has not yet been defined, we have turned to the dictionary to determine the ordinary meaning of undefined terms.[82] We start with something that should be uncontroversial. The word "part" commonly means "something less than the whole" and we see no reason that "part" in subsection (c)(3) means anything different.[83] Moving on, the common dictionary definition of the verb "base" means to "find a foundation or basis for" and it is usually paired with a prepositional word like "on."[84] This is precisely how the word "based . . . on" is used in § 3.156(c)(3). In *Safeco Ins. Co. of America v. Burr*, the Supreme Court held that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition."[85] And most recently, the Supreme Court has also held that the meaning of the

---

[79] OA at 3:20-:46.

[80] *Id.* at 24:55-25:20.

[81] 996 F.3d at 1326-27 (citing *Jones v. Wilkie*, 946 F.3d 1374, 1380 (Fed. Cir. 2020)).

[82] *See Watkins v. McDonough*, 35 Vet.App. 256, 264 (2022).

[83] MERRIAM WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/part (last visited Dec. 12, 2025).

[84] *Id.*, https://www.merriam-webster.com/dictionary/based%20on#dictionary-entry-2 (last visited Dec. 12, 2025).

[85] 551 U.S. at 63.

15

phrase "based on" is context dependent, explaining that in many cases, "based on" is a phrase that "indicates a but-for causal relationship[,]" but in other cases "more is needed."[86]

Using a "but-for" causation standard is not foreign to veterans law. In *Spicer v. McDonough,* the Federal Circuit concluded that in the context of veterans benefits under 38 U.S.C. § 1110 "[t]he but-for causation standard is not limited to a single cause and effect but rather contemplates multi-causal links."[87] This means that establishing one factor as a but-for cause does not necessarily eliminate all other factors as but-for causes. The Federal Circuit in *Spicer* was clear: "[T]he causation standard of [section] 1110 is simply standard but-for causation."[88]

So far so good. We have strong textual evidence that subsection (c)(3) embodies concepts associated with but-for causation, a concept we know from *Spicer*. But it turns out that we can't apply strict but-for causation without undermining § 3.156(c) as a whole. In fact, both parties agree that § 3.156(c)(3) requires something more than strict "but-for" causation.[89]  That is so because, if we were to read the phrase "based . . . on" in § 3.156(c)(3) as imposing a strict "but-for" causation requirement, it would essentially make the provision surplusage, something we can't do.[90] In a strict but-for causation world, every time a claimant satisfied the requirements of subsection (c)(1) leading to a reconsideration and an award of benefits, an earlier effective date under subsection (c)(3) would be warranted because "but for" the (c)(1) submission there would not have been a (c)(3) effective date. In amending § 3.156(c), VA specifically created subsection (c)(3) to clarify any confusion about how effective dates are assigned as a result of newly associated service department records and thus, we must give it meaning.[91] In addition, adopting a strict but-for causation test runs afoul of the Federal Circuit's decision in *Blubaugh*, as well as our own caselaw that followed *Blubaugh*, which all establish that subsections (c)(1) and (c)(3) are "separate and distinct."[92]

---

[86] *Environmental Protection Agency* (*EPA*) *v. Calumet Shreveport Refining, L.L.C.,* 605 U.S. 609, 145 S.Ct. 1735, 1750 (June 18, 2025).

[87] 61 F.4th 1360, 1364 (Fed. Cir. 2023).

[88] *Id*.

[89] OA at 11:25-13:41 (Appellant's position), 23:41-24:12 (Secretary's position).

[90] *See Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000) ("[C]anons of construction . . . require us to give effect to the clear language of a [regulation] and avoid rendering any portions meaningless or superfluous.").

[91] New and Material Evidence, 70 Fed. Reg. at 35389.

[92] *See Blubaugh*, 773 F.3d at 1313; *see also George*, 29 Vet.App. at 205; *Emerson*, 28 Vet.App. at 208.

16

If but-for causation is not the test, why not revert to the Secretary's proffered interpretation? While shifting somewhat during this appeal, it seems that the Secretary maintains that an earlier effective date under subsection (c)(3) is warranted only when the face of the decision shows that the agency decisionmaker substantially relied on the newly associated records to award a benefit. But the Secretary's view is too restrictive and would easily render § 3.156(c)(3) subject to manipulation or mischief. For example, if we were to read § 3.156(c)(3) as the Secretary suggests, once newly associated service department records are used to reopen under (c)(1), a person drafting the decisional document could simply choose, for whatever reason, not to specifically discuss the contents of those records, thus unduly altering a claimant's chance to obtain an earlier effective date. This possibility runs counter to the purpose of § 3.156(c), which is to ensure that a claimant is not harmed as a result of administrative error,[93] or as the Federal Circuit stated "to place a veteran in the position he would have been had [] VA considered the relevant service department record before the disposition of his earlier claim."[94] Therefore, requiring substantial reliance shown on the face of the decision would leave open the possibility for additional harm to a claimant. We will not read § 3.156(c)(3) in that way.

To be entirely transparent, articulating how one assesses what is required to establish entitlement to an earlier effective date under subsection (c)(3), that is *more than* strict but-for causation but *less than* the Secretary's substantial reliance approach, is no easy task. It *is* easy enough to for us to state the general rule: A claimant will be entitled to an earlier effective date under subsection (c)(3) when the newly associated service department records form a link in the chain of reasoning that supports an award of benefits, so long as the link is something more than merely causing reconsideration under subsection (c)(1). But as they say, the devil is in the details.

While we can't set out a detailed rule that will guide the assignment of effective dates under subsection (c)(3) today, we can provide a nonexhaustive list of factors that may be considered as part of the analysis. We begin with the relevant decision granting the benefit after reconsideration. While we rejected the Secretary's proposed approach as focusing too much on the face of the decision, that does not mean the decision is irrelevant. Indeed, the decision is a critical place to search for evidence of the reasoning behind the grant of the award. Another factor to consider is

---

[93] New and Material Evidence, 70 Fed. Reg. at 35389.

[94] *Blubaugh*, 773 F.3d at 1313.

17

how the relevant agency decisionmaker used the newly associated service records even if they are not cited in the actual decision. For example, if there was a hearing and the decisionmaker engaged with the relevant records in a way to suggest their use as a link in a chain of causation, that would be important information in the analysis.

In addition, the development of evidence as part of reconsideration may prove enlightening. To begin with, the nature of the evidence being developed when compared with the contents of the newly associated service department records may show how those records connect with the evidence being developed. A connection between them would support the link-in-chain approach we adopt today. The evidentiary development point may be particularly significant when assessing medical evidence. For example, here there were no VA medical opinions in the record before reconsideration. However, during reconsideration, VA obtained a medical opinion that ultimately played an important role in granting the benefit sought. If the newly associated records prompted VA to obtain the medical opinion, even in part, that would be a significant fact. This stands in contrast to a situation such as the one in *Flores-Vazquez*, where the veteran sought to reopen a previously denied claim for a psychiatric disorder. VA eventually reopened the claim and while appeal proceedings were pending, the veteran sought entitlement to service connection for another psychiatric disorder. While VA was developing evidence for the second psychiatric disorder claim, service department records that were classified when the RO denied the first psychiatric claim became declassified and were obtained as part of development the second psychiatric claim. Eventually, the Board granted both claims. The Board discussed the declassified service department records in its decision awarding service connection for the first psychiatric claim but discounted their relevance and granted service connection based on a VA examination that had been performed *before* the declassified service department records became part of the record. We affirmed the Board's decision.[95] At the Federal Circuit, the veteran argued that we applied an impermissibly high standard of what the term "based in part" requires, as used in § 3.156(c)(3), because "based" means to "lay a foundation" and that the newly acquired service

---

[95] Contrary to the Secretary's assertions, *Flores-Vazquez* does not resolve the issues raised on appeal here concerning the development of dispositive evidence. In *Flores-Vazquez,* the dispositive evidence was developed *before* the submission of newly associated service records. So, there was a clear line to be drawn. Whereas here, the dispositive evidence was developed *after* the submission of newly associated records. As we've said, these factual differences are the types of things the Board must consider when assessing whether an earlier effective date is warranted under subsection (c)(3).

18

records laid a foundation when they "played a role" in the grant of service connection. The Federal Circuit, however, found "no error in the legal standard" that we applied and explained that our determination that the records "played no role" in the award of benefits was a factual determination it could not review. The key is that the Board must engage in this analysis and adequately explain its reasoning.

The illustrations we have provided here to determine whether newly associated service department records formed part of the chain leading to an award of benefits are just that— illustrations. The assessment is a highly contextual one that is within the Board's authority as the factfinder. And as with other factual matters, we will only reverse the Board's factual findings about the causative chain if they are clearly wrong.

### D. Application

In the decision on appeal, the Board concluded that "the persuasive weight of the evidence is against finding the provisions regarding an earlier effective date due to receipt of relevant service records under 38 C.F.R. § 3.156 are applicable here."[96] The Board explained that appellant's award of benefits "was *not* made based *in any part* on the additional military personnel record referencing February 1969 receipt of '[t]he Army Commendation Medal with "V" [d]evice.' Significantly, this was not even one of the medals cited by the RO within the August 2020 rating decision granting benefits."[97]

The problem with the Board's analysis is that we can't tell if the Board considered entitlement to an earlier effective date under subsection (c)(3) using the approach we have outlined in this opinion. We do not know if the Board considered whether the newly acquired service department records played a supportive role sufficient to provide a causal link in the ultimate award of benefits, or if it only required "substantial reliance" as the Secretary argued and we rejected. Or perhaps the Board took an entirely different view of things than either we have held is correct or that the Secretary advanced in this appeal.

We reiterate that § 3.156(c)(3) unambiguously provides that entitlement to an earlier effective date is possible in a situation where an award of benefits via reconsideration under § 3.156(c)(1) is "based . . . in part on" (causally linked) to newly associated service department

---

[96] R. at 9.

[97] *Id*. (emphasis in original).

records. Because the Board did not make it clear what role the newly acquired service department records played and whether the newly acquired service department records were a link in the causal chain leading to the award of benefits, remand is required. [98] Moreover, we can't make the determination in the first instance because, as we described, the assessment of the role newly acquired service department records play under subsection (c)(3) is a factual one. We cannot make those types of factual determinations in the first instance.[99] On remand, the Board must reassess the evidence of record and its effective date determination with a proper understanding of how §3.156(c)(3) operates.

## IV. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record, and the governing law, the Court SETS ASIDE the August 30, 2023, Board decision and REMANDS this matter for further proceedings consistent with this decision.

PIETSCH, *Judge, concurring in the judgment*: I agree that the Board provided inadequate reasons or bases to support its decision, so I concur in the judgment. Where I disagree is that I believe the lack of adequate reasons or bases affects both 38 C.F.R. § 3.156(c)(1) and (c)(3) and prevents us from reaching the issue the majority reaches here. Because the facts are important, I will detail the proceedings.

After the February 1991 regional office (RO) decision became final, Mr. Reynolds sought to reopen his claim by filing different forms. In May 2020, he applied for VA benefits for bilateral hearing loss. R. at 483-87. At that time, he also submitted a statement in support of claim and service records, including February 1969 awards of the "Army Commendation Medal with 'V' [d]evice" and the "Bronze Star Medal with 'V' [d]evice," both of which noted his participation in combat operations in Vietnam, as well as another record showing receipt of other awards, including a Purple Heart. R. at 476-78, 480-82. He asked VA to use this evidence as proof of combat. R. at 478. In July 2020, Mr. Reynolds filed a supplemental claim seeking benefits for

---

[98] *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

[99] *See Stinson v. McDonough*, 92 F.4th 1355, 1360 (Fed. Cir. 2024) (citing *Tadlock v. McDonough*, 5 F.4th 1327, 1334 (Fed. Cir. 2021)).

bilateral hearing loss. R. at 417-18. On the same date in July 2020, Mr. Reynolds also filed a statement in support of claim requesting VA to reopen his claim for bilateral hearing loss. R. at 415-16. He disputed the February 1991 RO's finding that there was no evidence of hearing loss in his service records and cited service treatment records from 1969 that document hearing loss caused by exposure to an explosion during service. R. at 415.

In the August 2020 decision that granted Mr. Reynolds's benefits, the RO cited 38 C.F.R. §§ 3.303, 3.304, 3.385. The RO assigned an effective date of July 1, 2020, finding that date to be the date Mr. Reynolds's claim was received. R. at 337. The RO noted provisions concerning the effective dates for supplemental claims. *Id*. The RO stated that "[i]n support of your claim, new and relevant evidence has been received and your claim is now reconsidered." *Id*. The majority seems to accept this language as evidence that Mr. Reynold's claim was reconsidered under § 3.156(c)(1) despite the RO never citing that regulation. *See ante* at 9. The parties also agree that though the language is imprecise, the language does not matter.

Mr. Reynolds disagreed with the effective date assigned in August 2020 and sought an effective date of February 14, 1991. R. at 295-96. In a September 2022 decision, the Board granted an effective date of May 21, 2020, the date Mr. Reynolds filed his May 2020 application for benefits for bilateral hearing loss. R. at 63-64 (citing R. at 483-87). The Board, again, did not discuss reconsideration under § 3.156(c)(1) or (c)(3). The Board stated that Mr. Reynolds's claim was reopened under § 3.156 based on the submission of new and material evidence, apparently applying § 3.156(a). R. at 64. The Board made that statement as part of a discussion concerning how to reopen or revise a previously denied claim in the legacy system. *Id*. In assigning the May 21, 2020, effective date, the Board cited 38 C.F.R. § 3.400.

After Mr. Reynolds appealed that decision, the Court granted the parties' joint motion for partial remand (JMPR), agreeing that the Board failed to provide adequate reasons or bases by failing to consider "whether § 3.156(c) was implicated by the submission of the service personnel record attached to the claim form in July 2020," which might warrant an earlier effective date based on his claim being reconsidered under that provision. R. at 24. With this language, the parties seemed to recognize that VA had not discussed whether his claim was reconsidered under § 3.156(c)(1), which might warrant an earlier effective date under § 3.156(c)(3). The problem is the parties only referred to § 3.156(c) generally.

In the decision on appeal, the Board only referred to § 3.156(c) generally, noting that

21

38 C.F.R. § 3.156(c) provides that, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim. If an award is made based all, or in part, on the records, the effective date assigned will be the date entitlement arose or the date VA received the previously decided claim, whichever is later.

The Board first notes the Veteran's [service treatment records] STRs were available and reviewed as part of the February 1991 denial of service connection for bilateral hearing loss. In fact, prior to the February 1991 rating decision, the claims file contained the [v]eteran's DD214 listing his receipt of a Purple Heart, Combat Infantry[man] [Badge], and military occupation specialty of light weapons infantry, STRs referencing a 1968 RPG blast with reports of loss of hearing and instructions to keep away from loud noises for three weeks, and a separation report of medical history endorsing ear trouble. The RO also listed review of the [v]eteran's STRs within the evidence portion of the February 1991 rating decision.

The Board acknowledges that in association with his May 2020 VA 21-526EZ, the [v]eteran submitted a military personnel record referencing a February 1969 receipt of "[t]he Army Commendation Medal with 'V' [d]evice." The award references being under enemy fire. Receipt of an Army Commendation Medal, however, was already listed within the [v]eteran's DD214 before the RO at the time of the February 1991 rating decision.

Most significantly, the [v]eteran's grant of service connection for bilateral hearing loss was ultimately based upon his military occupation specialty of light weapons infantry with combat noise exposure as evidenced by his receipt of a Purple Heart and Combat Infantry[man] Badge[,] as well as a positive nexus opinion obtained through a VA examination. In other words, the [v]eteran's grant of service connection for bilateral hearing loss was not made based in any part on the additional military personnel record referencing February 1969 receipt of "The Army Commendation Medal with 'V' Device." Significantly, this was not even one of the medals cited by the RO within the August 2020 rating decision granting benefits. Thus, the Board finds the persuasive weight of the evidence is against finding the provisions regarding an earlier effective date due to receipt of relevant service records under 38 C.F.R. § 3.156 are applicable here.

R. at 8-9.

The majority reads this analysis as the Board making a favorable finding that Mr. Reynolds's claim was reconsidered under § 3.156(c)(1). I believe the Board's analysis is unclear and frustrates judicial review by conflating §§ 3.156(c)(1) and (c)(3). The Board only discussed an effective date under § 3.156(c)(3) because the parties agreed that the Board should address it in

22

their JMPR. During oral argument, the Secretary conceded that (c)(1) applied, but the record does not clearly indicate that Mr. Reynolds's claim was ever reconsidered under that provision. While the RO used the word "reconsidered" in one document, nowhere in the record was 3.156(c)(1) ever cited. R. at 337.

The majority is happy to concede that § 3.156(c)(1) was applied in this case and move onto addressing § 3.156(c)(3). I understand the temptation, but how a final claim was treated when it was readjudicated matters to the effective date assigned. Throughout Mr. Reynolds's appeal, his attempts to obtain benefits for bilateral hearing loss have been characterized as a claim to reopen a previously denied claim through the submission of new and material evidence under the legacy system and as a supplemental claim under the modernized system. Only in the decision on appeal did the Board mention § 3.156(c) and only because the parties sought that discussion through the JMPR. The record and the Board's analysis are not clear about how Mr. Reynolds's claim was treated in ultimately awarding him benefits for bilateral hearing loss.

None of this is to say that I do not believe that § 3.156(c)(1) should apply to the facts in this case. I agree with much of the majority's discussion concerning §3.156(c) generally and the majority's statement that the assessment of whether an effective date is warranted under § 3.156(c)(3) is a highly contextual one that the Board must address as a factfinder. The problem is that the factors the majority wants the Board to consider involve looking at the decision granting benefits after reconsideration, including the reasoning used by the decisionmaker and how the newly associated records were used in reaching the decision. I do not see any decision in the record granting reconsideration of Mr. Reynolds's claim under § 3.156(c)(1). The record is not clear that Mr. Reynolds's claim was ever properly reconsidered.

The caselaw concerning what role newly associated service records must play to warrant an earlier effective date under § 3.156(c)(3) is unclear. At best, the caselaw tells us what not to do. Here, the majority adopts a new approach where the law was not even applied in this case. To me, this appeal simply is not the right case to create a new rule. For these reasons, I concur only in the result.

23

JAQUITH, *Judge*, concurring. I join Chief Judge Allen's thorough opinion, but I also write separately to emphasize that the details here bedevil[100] the August 2023 Board decision that the veteran's August 2020 grant of service connection for bilateral hearing loss was not based in any part on the additional military personnel records he submitted in May and July 2020. The Board decision was the culmination of a deeply flawed process that was controlled by VA's choice not to list the newly associated records that prompted reconsideration—even though those records were uniquely favorable as the only detailed, specific, and officially verified evidence of the veteran's central role in combat twice involving a heavy and intense concentration of weapons fire in a dense jungle in Vietnam.[101]

In 1968, then 20 year old U.S. Army Sergeant Charles Reynolds, an infantryman, was in the thick of the action in Vietnam.[102] His medical records reflected that he was exposed to a rocket-propelled grenade (RPG) blast on February 28, 1968,[103] and suffered significant shrapnel wounds and a loss of hearing for which he was seen on October 12, 1968, and then evaluated on October 17, 1968.[104] The veteran's "[t]est results indicated significant hearing loss."[105] When he separated from active service, he noted both his hearing loss and shrapnel surgery.[106] And his certificate of release from active duty (DD 214) showed that he had earned a Purple Heart, a Combat Infantryman Badge (CIB), and an Army Commendation Medal.[107]

In August 1990, the veteran sought disability compensation for his loss of hearing from combat action in Vietnam: On February 28, 1968, he set off a booby trap which exploded and left shrapnel in his body and he experienced a loss of hearing in August 1968 while on active duty in

---

[100] *Ante* at 18.

[101] In my view, the flaws in the process include VA's inattention to 38 C.F.R. § 3.156(c), as Judge Pietsch highlights, *see ante* at 20-24, but that flawed process culminated in the erroneous August 2023 Board decision that necessitates at least the remand the Court orders today for the Board to apply the express language of § 3.156(c) to the facts that are not reasonably disputable, rather than some lesser step that prolongs the path to resolution of the veteran's case regarding injuries over 57 years ago and a claims process nearing 35 years long.

[102] R. at 672-73.

[103] R. at 348.

[104] R. at 612-15.

[105] R. at 348.

[106] R. at 594-96.

[107] R. at 672.

Vietnam.[108] A July 1990 medical record showed that he suffered from mild to profound hearing loss.[109] The report of his medical history the day of the expiration of his term of service in December 1968 reflected that he experienced hearing loss and that he had surgery to remove shrapnel wounds in Vietnam.[110]

A November 1990 VA compensation and pension examination confirmed the veteran's sensorineural hearing loss and shrapnel wounds to his right lower thigh, right upper thigh, posterior chest, left arm, and right hip—with "retained metallic fragments in soft tissue" near his ischium, ilium, clavicle, and scapula, and in his neck and right thigh.[111] The regional office's (RO) February 1991 rating decision granted service connection and a 10% disability rating for the residuals of the veterans multiple shell fragment wounds, which the RO attributed to the veteran being hit by enemy fire during a mortar attack.[112] And the RO acknowledged that the veteran's VA exam showed sensorineural hearing loss.[113] But the RO denied the veteran's hearing loss claim, declaring that his service medical records were negative for any chronic hearing problem, specifically citing the veteran's separation exam.[114] The RO listed the evidence considered in making that decision as the veteran's "[s]ervice medical records, VA exam of 11-07-90, [and] report from West Georgia Speech and Hearing Center dated 07-13-90."[115]

In May 2020, the veteran applied again, citing the 1968 RPG explosion, attaching proof that in 1968 he had earned a Bronze Star Medal with a V device and an Army Commendation Medal with a V device, attaching his DD 214 and highlighting that it listed both his Purple Heart and his CIB, and asking that VA "please use this evidence as proof of combat."[116] VA acknowledged receipt of the veteran's May 2020 claim.[117]

---

[108] R. at 557.

[109] R. at 568.

[110] R. at 594, 596.

[111] R. at 522-26.

[112] R. at 514-15.

[113] Id.

[114] Id.

[115] R. at 507, 511, 514.

[116] R. at 483-87.

[117] R. at 474-75.

25

In July 2020, the veteran sought review of the 1991 rating decision via a supplemental claim[118] and submitted a statement asking to reopen his claim for bilateral hearing loss, noting that an April 1969 service treatment record (STR) reflecting his complaint of hearing loss due to an explosion.[119] He again submitted the general orders bestowing his Bronze Star Medal with V device and his Army Commendation Medal with V device.[120]

In August 2020, a VA audiological evaluation was conducted based on an examination of the veteran and his VA e-folder.[121] Finding that "[i]t is conceded that the Veteran was likely exposed to noise levels that could have produced permanent hearing damage," the audiologist highlighted the veteran's military occupational specialty (MOS), CIB, and Purple Heart, as well as the February 1968 RPG blast and the October 17, 1968, test results showing "significant hearing loss,"[122] —test results that closely followed the veteran's valor amidst intense firefights in close combat, as certified by his Bronze Star with V device and his Army Commendation Medal with V device.

In August 2020, the RO granted service connection for bilateral hearing loss with an evaluation of 70%, effective July 1, 2020.[123] The RO's list of the evidence it considered included the veteran's May 2020 and July 2020 statements—the very statements that submitted the veteran's awards for valor in intense combat.[124] Yet the RO curiously cited only the matters evident from the veteran's discharge certificate: "Service connection is warranted because your hearing loss has been related to your MOS of [l]ight [w]eapons [i]nfantry and combat noise exposure. You are in receipt of the Purple Heart, Combat Infantry[man] Badge; therefore, MOS and combat noise exposure is conceded."[125]

---

[118] R. at 416.

[119] R. at 415.

[120] R. at 425-27.

[121] R. at 344.

[122] R. at 348.

[123] R. at 317.

[124] R. at 336-37.

[125] R. at 337.

On appeal, the September 2022 Board observed that the veteran had highlighted that the original denial of his claim erroneously stated that there was no record in his STRs of hearing loss,[126] and that the veteran

> asserts the effective date should be February 14, 1991, which the Board notes is the date of the February 1991 rating decision that denied his claim, as VA did not do its due diligence when he applied for compensation in referring to his service treatment and personnel records from his Vietnam service when they made their initial decision.[127]

The September 2022 Board noted that the February 1991 rating decision could "be reopened through the submission of new and material evidence, see 38 C.F.R. § 3.156, which occurred in this case."[128] Yet the September 2022 Board decision nonetheless failed to address the effective date provision in § 3.156(c), resulting in the Court granting a joint motion for partial remand.[129]

A different Board member decided the case on remand. She noted the veteran's STRs "were available and reviewed as part of the February 1991 denial of service connection for bilateral hearing loss," and that the claims file contained the veteran's DD 214, "listing his receipt of a Purple Heart, Combat Infantry medal [sic], and military occupation specialty of light weapons infantry."[130] The Board acknowledged that in May 2020 the veteran had shown that in February 1969 he had received the Army Commendation Medal with V device, but declared that "[r]eceipt of an Army Commendation Medal . . . was already listed within the Veteran's DD 214 before the RO at the time of the February 1991 rating decision."[131]

There are several problems with the August 2023 Board decision. As an initial matter, it is not clear that the veteran's DD 214 actually was before the RO in February 1991—the RO did not list it as evidence it considered or otherwise note it.[132] Beyond that unexplained irregularity, (1) the Board completely overlooked the most significant record the veteran submitted—his Bronze Star Medal with V device; (2) the Board equated the veteran's submission of his Army

---

[126] R. at 64; s*ee* R. at 415.

[127] R. at 64.

[128] *Id.*

[129] R. at 23-27.

[130] R. at 9.

[131] *Id.*

[132] *Id.*; R. at 507, 511, 514.

Commendation Medal with V device with the Army Commendation Medal listed on his DD 214; (3) the Board attached special significance to the RO's failure to note the veteran's Army Commendation Medal with V device when the RO granted service connection; and (4) assuming the RO considered the information on the veteran's DD 214 in February 1991, the Board embraced the RO echoing the evidence it had considered and found insufficient when it denied the veteran's claim in 1991, to grant the same claim in 2020.

The V devices reflect that Sgt. Reynolds performed acts of valor in combat.[133] The orders announcing the veteran's awards detail his courage.

The veteran earned a Bronze Star Medal with a V device for the following bravery involving intense fire: On August 12, 1968, while operating in a mountainous jungle so dense that visibility was limited to a few feet, even in daylight, North Vietnamese soldiers directed small arms and automatic weapons fire on Sgt. Reynolds's unit without warning, wounding his squad leader.[134] "Sergeant Reynolds immediately assumed command of the squad, and, rallying his men, bravely and skillfully evacuated the wounded squad leader, while directing an intense concentration of friendly fire." [135] Then, Sgt. Reynolds led his squad back into the dark undergrowth and spearheaded a resolute drive that "forced the enemy to retreat, abandoning an entire base camp."[136]

The veteran earned an Army Commendation Medal with a V device for the following bravery under intense fire: On October 2, 1968, Sgt. Reynolds led his squad in springing an ambush on Viet Cong in jungle terrain, leading to a heavy concentration of return fire by Viet Cong in hiding.[137] Sgt. Reynolds, "with total disregard for his own safety, moved through the intense hostile fire to each of his men and directed their fire," resulting "in the complete elimination of all enemy resistance."[138]

In addition to chronicling the veteran's extraordinary bravery and leadership, his awards are important favorable evidence supporting his hearing loss claim, demonstrating repeated

---

[133] *See* U.S. DEP'T OF ARMY, REG. 600-8-22, MILITARY AWARDS, para. 3-16(e), 3-19(d) (Aug. 30, 2025).

[134] R. at 425.

[135] *Id.*

[136] *Id.*

[137] R. at 426.

[138] *Id.*

28

exposure to hazardous combat noise from heavy concentrations of weapons fire in mountainous jungle terrain. The veteran's Bronze Star Medal was awarded for his valor in combat on August 12, 1968, corresponding to his claim of hearing loss occurring in August 1968.[139] Both that event and the veteran's valor in combat on October 2, 1968, earning his Army Commendation Medal with V device, obviously occurred between the February 28, 1968, RPG blast and the veteran's October 17, 1968, test results indicating significant hearing loss.[140]

In contrast to the officially verified, repeated instances of the veteran's leadership of ferocious fighting involving an intense concentration of weapons fire in a dense jungle in the mountains, the veteran's DD 214 provided no information regarding the nature and circumstances of the wounding that gave rise to his Purple Heart and no specifics regarding the nature or extent of the veteran's combat service as an infantry soldier.[141] And an Army Commendation Medal without a V device may be awarded for meritorious service in any context, including an office, a motor pool, and a kitchen,[142] so the newly associated evidence of valor under intense weapons fire is a game changer for a hearing loss claim. Neither the RO nor the Board explained how the evidence deemed inadequate in February 1991 carried the day in August 2020 and August 2023, if the newly associated awards for valor in combat played no part. It was only after the veteran's awards for valor amidst heavy concentrations of weapons fire were associated with his file in May and July 2020 that the February 1991 assessment that his records were negative for chronic hearing loss[143] was supplanted by the August 2020 concession that "the [v]eteran was likely exposed to noise levels that could have produced permanent hearing damage."[144] Then the veteran's hearing loss was attributed to combat noise exposure—resulting in a grant of service connection—based on evidence that included the veteran's May and July 2020 statements.[145] However, VA mentioned only the veteran's DD 214 of the pages he submitted with those statements; VA omitted that the

---

[139] *See* R. at 425, 480, 557.

[140] *See* R. at 348, 426, 476, 484, 557, 612.

[141] *See* U.S. DEP'T OF ARMY, REG. 600-8-22, MILITARY AWARDS, para. 8-9 (Aug. 30, 2025).

[142] *See Id.* at para. 3-19.

[143] R. at 511.

[144] R. at 348; *see* R. at 337.

[145] R. at 336-38.

veteran's submissions highlighted and included the veteran's awards for valor in combat, as well as the veteran's description of two additional specific instances of his combat noise experiences.[146]

Notwithstanding the Court's remand based on the parties' acknowledgment that the Board must discuss whether the effective date provisions of § 3.156(c) were implicated by the veteran's 2020 submission of the records of his combat valor in 1968,[147] the August 2023 Board decision uncritically ratified what the RO said and didn't say, highlighting as most significant that the RO said it was the veteran's Purple Heart, CIB, and MOS, and not the veteran's unmentioned Army Commendation Medal with V device, that warranted service connection—and did not impact the effective date. In so doing, the Board failed to fulfill its obligation to analyze the veteran's favorable evidence and set forth adequate reasons or bases for its decision.[148] Most glaringly, the Board completely overlooked the veteran's Bronze Star with V device and failed to account for the stark difference between an Army Commendation Medal with V device and one without.

In my view, the Court acts within its statutory authority in reviewing the factual determination the Board explicitly made and finding that determination to be clearly erroneous.[149] As the Court often recites, "'[a] finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[150] The circumstances here are sufficiently pungent that there is no factual questions open to reasonable debate.[151] Why would VA ignore the best evidence that the grenade blast was not a singular event of combat noise exposure—the evidence that this veteran was so deeply in the thick of the battle that he had twice received awards for valor for taking the fight to the enemy in the midst of intense gun battles in close combat in the dense jungle? Especially when those officially recognized events were just 9 and 2 weeks before an in-service

---

[146] R. at 415-30, 476-87. In two handwritten statements, the veteran recounted having killed five enemy soldiers by setting off two Claymore mines in February 1968, R. at 428, and having killed another enemy solider by shooting him multiple times in January 1968. R. at 429.

[147] R. at 24.

[148] *See Southall-Norman v. McDonald*, 28 Vet.App. 346, 355 (2016).

[149] *See Stinson v. McDonough*, 92 F.4th 1355, 1360-63 (Fed. Cir. 2024).

[150] *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, (1948)); *see Willen v. Collins*, 38 Vet.App. 259, 271 (2025).

[151] *See Willen*, 38 Vet.App. at 271; *Tadlock v. McDonough*, 5 F.4th 1327, 1337 (Fed. Cir. 2021) ("When questions of fact are open to debate, veterans are entitled to present whatever evidence and arguments they have to [VA] . . . in the first instance."); *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) ("To be clearly erroneous, a decision must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.").

30

hearing test showing significant hearing loss, and whether the veteran's combat noise exposure was sufficient to show chronic or even permanent hearing loss was the determinative issue? The obvious answer is to manipulate the effective date to minimize the benefits payout—perhaps as a unilateral "compromise" that grants service connection without acknowledging a part of the basis for doing so. Although such a misplaced maneuver would merit reversal, I concur in the judgment to remand this matter to the Board for it to do the right thing.